IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

J .N   NOV X 9 2007
ΠΟ V X 9 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

THOMAS BAKER & ANGELA BAKER, )
)
Plaintiffs, )
)
v. )
)
PATRICK MCGAHREN, HOWARD )
SCHWARTZ and UNICYN FINANCIAL )
COMPANIES LLC, a New Jersey Limited )
Liability Company, )
)
Defendants. )
)

07cv6368
JUDGE LEINENWEBER
MAG. JUDGE ASHMAN

## DEFENDANTS' NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441(a) and (b) and § 1446, Defendants Patrick McGahren,

Howard Schwartz, and Unicyn Financial Companies LLC ("Defendants") hereby remove the

above captioned case from the Circuit Court of Cook County to this Court. The grounds for this

removal are as follows:

### PROCEDURAL HISTORY

1.      On February 20, 2007, Plaintiffs Thomas Baker and Angela Baker ("Plaintiffs")

filed a Complaint against Defendants Patrick McGahren and Howard Schwartz in the Circuit

Court of Cook County in the State of Illinois (07 L 1900). The Complaint was a civil action

brought under the Illinois Wage Payment and Collection Act ("Wage Act"). Plaintiffs did not

request damages in excess of $75,000, exclusive of interest and costs, so Defendants did not

remove the action. (A true and accurate copy of the 2/20/07 Summons and Complaint is

attached hereto as Exhibit 1).

2.      On July 16, 2007 Plaintiffs filed a Complaint against Defendant Unicyn Financial

Companies LLC ("Unicyn") in the Circuit Court of Cook County in the State of Illinois. (07 L

7380) The Complaint was a civil action brought under the Illinois Wage Act. Plaintiffs did not request damages in excess of $75,000, exclusive of interest and costs, so Defendants did not remove the action. (A true and accurate copy of the 7/16/2007 Summons and Complaint is attached hereto as Exhibit 2).

3.      On October 4, 2007 an Agreed Order was entered consolidating Plaintiffs' action against Unicyn (07 L 7380) into Plaintiffs' action against McGahren and Schwartz (07 L 1900). (A true and correct copy of the 10/4/07 Order is attached hereto as Exhibit 3).

4.      On October 11, 2007, Defendants received Notice of Plaintiffs' Motion to File an Amended Complaint along with a copy of the proposed Amended Complaint. (A true and correct copy of Plaintiffs' Motion for Leave to File an Amended Complaint is attached hereto as Exhibit 4). The proposed Amended Complaint combined the causes of action asserted in the separate lawsuits into a single pleading, added additional counts for breach of contract and fraud, and increased the amount of requested damages. Plaintiffs Motion for leave to File an Amended Complaint was granted on October 16, 2007. (A true and accurate copy of the 10/16/2007 Order is attached hereto as Exhibit 5).

5.      On October 16, 2007 Plaintiffs Thomas Baker and Angela Baker filed the Amended Complaint in the above captioned action against Defendants in the Circuit Court of Cook County in the State of Illinois. (Case No. 07 L 1900) (A true and accurate copy of Plaintiffs' Amended Complaint is attached hereto as Exhibit 6).

## GROUNDS FOR REMOVAL

6.      Section 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the

defendant or the defendants, to the district court of the United States for the district and division

embracing the place where such action is pending." 28 U.S.C. §1441(a).

7.    Under Section 1446(b)

> [t]he notice of removal of a civil action or proceeding shall be filed
> within thirty days after the receipt by the defendant, through
> service or otherwise, of a copy of the initial pleading setting forth
> the claim for relief upon which such action or proceeding is based,
> or within thirty days after the service of summons upon the
> defendant if such initial pleading has then been filed in court and is
> not required to be served on the defendant, whichever period is
> shorter.
>
> If the case stated by the initial pleading is not removable, a notice
> of removal may be filed within thirty days after receipt by the
> defendant, through service or otherwise, of a copy of an amended
> pleading, motion, order or other paper from which it may first be
> ascertained that the case is one which is or has become removable,
> except that a case may not be removed on the basis of jurisdiction
> conferred by section 1332 of this title more than 1 year after
> commencement of the action.

28 U.S.C. § 1446(b).

8.    This Court has original diversity jurisdiction over this action pursuant to section

1332(a)(1) because Plaintiffs' Amended Complaint is a civil action between citizens of different

states and involves an amount in controversy in excess of $75,000, exclusive of interest and

costs.

9.    First, there is diversity of citizenship between the parties in this action. Plaintiffs

are residents of Illinois. Defendant Patrick McGahren is a resident of Pennsylvania. Defendant

Howard Schwartz is a resident of New Jersey and Defendant Unicyn Financial Companies LLC

("Unicyn") is a limited liability corporation incorporated in New Jersey with its principal place

of business in Closter, New Jersey.

10.    Second, the amount in controversy exceeds $75,000, exclusive of interest and costs. In their Amended Complaint, plaintiffs allege that "as of the date of Thomas' resignation, Unicyn owed Thomas additional Wages on funded transactions in the amounts of at least $67,343." (Amended Compl. ¶ 43). Plaintiffs also allege that "Unicyn owed Thomas additional wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, for which Thomas was procuring cause." (*Id.*). Additionally, Plaintiffs allege that as of the date of Angela's resignation, Unicyn owed her gross Wages on funded transactions in the amount of at least $29,314." (*Id.* ¶ 44). Plaintiffs further allege that "Unicyn owed additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns and anyone acting or purporting to act on its behalf, for which Angela was the procuring cause." (*Id.*). Finally, Count VIII, Plaintiffs request that the Court "award [Plaintiffs] compensatory and punitive damages" against Defendants. (*Id.* Count VIII). On these alleged facts, Defendants reasonably believe and aver that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

11.    This petition for Removal is being filed within 30 days of the date on which the Defendants received Plaintiffs' Motion For Leave to File an Amended Complaint and proposed Amended Complaint, and accordingly, became aware that there is diversity among the parties in this action and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

12.    This petition for Removal is also being filed within one year of the commencement of this action in accordance with § 1446(b).

- 4 -

13.   The United States District Court for the Northern District of Illinois is the federal judicial district accompanying the Circuit Court of Cook County, Illinois, where the suit was originally filed. Venue therefore is proper in this district pursuant to 28 U.S.C. § 1441(a).

14.   Pursuant to 28 U.S.C. § 1446(a), Defendants have attached all process; pleadings, and orders that have been served upon defendants in this action. (Copies of the remaining orders served upon defendants in this action are attached hereto as Exhibit 7).

15.   Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly serve this Notice of Removal on Plaintiffs and will promptly file a copy of this Notice of Removal with the Clerk of Cook County in the State of Illinois.

WHEREFORE, Defendants respectfully submit this Notice of Removal to remove the above captioned case from the Circuit Court of Cook County in the state of Illinois to the United States District Court for the Northern District of Illinois.

Dated: November 9, 2007                    Respectfully submitted,

                                           Andrew S. Rosenman (ARDC #6230148)
                                           Diane R. Sabol (ARDC # 6278369)
                                           MAYER BROWN LLP
                                           71 South Wacker
                                           Chicago, IL 60606-4637
                                           (312) 782-0600
                                           (312) 701-7711 – Facsimile

                                           Randall C. Schauer
                                           FOX ROTHSCHILD LLP
                                           747 Constitution Dr., Suite 100
                                           Exton, PA 19341

                                           *Attorneys for Defendants PATRICK
                                           MCGAHREN, HOWARD SCHWARTZ and
                                           UNICYN FINANCIAL COMPANIES, LLC, a
                                           New Jersey Limited Liability Company*

# EXHIBIT 1

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW _____ DIVISION

(Name all parties)

Thomas Baker & Angela Baker _____

v.

Patrick McGahren & Howard Schwartz _____

No. 2007L001900
CALENDAR/ROOM T
TIME 00:00
Statutory Action

**PLEASE SERVE:**
Patrick McGahren
Leaf Financial Corp.
1818 Market Street, 9th Floor
Philadelphia, PA 19103

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 30375

Name: Paul A. Greenberg/Aronberg Goldgehn

Atty. for: Plaintiffs

Address: 330 North Wabash, Suite 3000

City/State/Zip: Chicago, IL 60611

Telephone: (312) 828-9600

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____

FEB 20 2007

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT

Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)    (Facsimile Telephone Number)

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| Thomas Baker & Angela Baker, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | 2007L001900 |
| Patrick McGahren & Howard Schwartz, | ) | CALENDAR/ROOM T |
| | ) | TIME 00:00 |
| Defendants. | ) | Statutory Action |
| | ) | |

## COMPLAINT AT LAW

Plaintiffs, Thomas Baker and Angela Baker, by their attorneys, Aronberg

Goldgehn Davis & Garmisa, for their Complaint at Law against Defendants,

Patrick McGahren and Howard Schwartz, state as follows:

## PARTIES, JURISDICTION & VENUE

1.      Plaintiffs, Thomas Baker ("Thomas") and Angela Baker ("Angela")

(hereinafter collectively referred to as the "Bakers" or "Plaintiffs"), are

individuals residing in the State of Illinois.

2.      Plaintiff is informed and believes that Defendant, Patrick

McGahren ("McGahren"), is an individual residing in the State of Pennsylvania.

3.      Plaintiff is informed and believes that Defendant, Howard Schwartz

("Schwartz"), is an individual residing in the State of New Jersey.1

4.      Jurisdiction and venue are proper in Cook County, Illinois because

McGahren and Schwartz employed, as that term is defined in the Illinois Wage

Payment and Collection Act (820 ILCS 115/1 *et seq.*) (the "Wage Act"), Plaintiffs

Payment and Collection Act (820 ILCS 115/1 *et seq.*) (the "Wage Act"), Plaintiffs in Cook County, Illinois, violated the Wage Act in Cook County, Illinois, solicited Plaintiffs' employment in Cook County, Illinois, and paid wages to Plaintiffs here.

## BACKGROUND

5.    On July 6, 2005, Thomas and Angela signed an employment agreement (the "Employment Agreement") with Unicyn Financial Companies, LLC ("Unicyn"). (Ex. 1, the Employment Agreement.)  At all relevant times, Unicyn was in the business of, among other things, providing specialized financial products to the healthcare industry and other commercial enterprises on a national basis.

6.    Shortly after executing the Employment Agreement, on or about July 15, 2005, Plaintiffs began working for Unicyn as sales representatives.

7.    Under the terms of the Employment Agreement, Unicyn was obligated to pay Thomas and Angela a base salary plus commissions (collectively referred to as "Wages") during the term of their employment, as well as commissions on all transactions funded after the termination of their employment for which they were the procuring cause.

8.    Throughout Plaintiffs' tenure at Unicyn, McGahren was Unicyn's President and Manager and Schwartz was its Manager.  McGahren and

---

1 McGahren and Schwartz are sometimes collectively referred to as "Defendants."

Schwartz were principally responsible for all of Unicyn's business and financial decisions, including ensuring that Unicyn paid Plaintiffs' wages.

9.      On June 19, 2006, Thomas and Angela resigned from their respective positions at Unicyn due to, among other things, McGahren and Schwartz's material misrepresentations leading up to the signing of the Employment Agreement, their unilateral alteration of the material terms and conditions of Plaintiffs' employment, and Unicyn's repeated and systematic breaches of the Employment Agreement.

10.     As of the date of Thomas' resignation, Unicyn owed him gross Wages on funded transactions in the amount of $24,843.58. Unicyn owed Thomas additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, for which Thomas was the procuring cause. Thomas is unable to ascertain the precise amount of post-resignation commissions that he is owed because the information necessary to calculate that amount is in Defendants' control.

11.     As of the date of Angela's resignation, Unicyn owed her gross Wages on funded transactions in the amount of $29,314.92. Unicyn owed Angela additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, for which Angela was the procuring cause. Angela is unable to ascertain the precise amount of post-resignation

3

commissions that she is owed because the information necessary to calculate that amount is in Defendants' control.

12.    On January 30, 2007, Thomas and Angela each sent McGahren and Schwartz a demand for payment of the amount of Wages owed to them pursuant to the Wage Act and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).  (True and accurate copies of Thomas' and Angela's demand letters are attached hereto as Exhibits 2-5, respectively.) Despite Plaintiffs' demands, McGahren and Schwartz have failed to pay Plaintiffs the amount of the Wages that they are owed.

## Count I
## Violation of the Wage Act
## Thomas v. McGahren

13.    Thomas restates, realleges and incorporates Paragraphs 1 through 12 of this Complaint as if fully set forth herein.

14.    The Wage Act involves public rights and embodies Illinois public policy.  The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits.  An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

15.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3.  With respect to separated employees, the Wage Act provides that "[e]very employer shall pay

4

the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

16.    Because McGahren knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Thomas the Wages he earned, McGahren is deemed to be Thomas' "employer" pursuant to the Wage Act.

17.    Thomas' salary and commissions constitute "wages" under the WPCA.

18.    Thomas has made a written demand of McGahren for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act.  Despite Thomas' demand, McGahren has failed and refused to pay Thomas his final compensation.

19.    McGahren's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count I of the Complaint in his favor and against Defendant, Patrick McGahren, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

5

## Count II
## Violation of the Wage Act
## Angela v. McGahren

20.    Angela restates, realleges and incorporates Paragraphs 1 through 12 of this Complaint as if fully set forth herein.

21.    The Wage Act involves public rights and embodies Illinois public policy.  The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits.  An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

22.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3.  With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

23.    Because McGahren knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Angela the Wages she earned, McGahren is deemed to be Angela's "employer" pursuant to the Wage Act.

24.    Angela's salary and commissions constitute "wages" under the WPCA.

6

25.    Angela has made a written demand of McGahren for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Angela's demand, McGahren has failed and refused to pay Angela her final compensation.

26.    McGahren's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count II of the Complaint in her favor and against Patrick McGahren in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

### Count III
### Violation of the Wage Act
### Thomas v. Schwartz

27.    Thomas restates, realleges and incorporates Paragraphs 1 through 12 of this Complaint as if fully set forth herein.

28.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

7

29.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

30.    Because Schwartz knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Thomas the Wages he earned, Schwartz is deemed to be Thomas' "employer" pursuant to the Wage Act.

31.    Thomas' salary and commissions constitute "wages" under the WPCA.

32.    Thomas has made a written demand of Schwartz for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Thomas' demand, Schwartz has failed and refused to pay Thomas his final compensation.

33.    Schwartz's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count III of the Complaint in his favor and against Defendant, Howard Schwartz, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

8

## Count IV
## Violation of the Wage Act
## Angela v. Schwartz

34.    Angela restates, realleges and incorporates Paragraphs 1 through 12 of this Complaint as if fully set forth herein.

35.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

36.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

37.    Because Schwartz knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Angela the Wages she earned, Schwartz is deemed to be Angela's "employer" pursuant to the Wage Act.

38.    Angela's salary and commissions constitute "wages" under the WPCA.

9

39.    Angela has made a written demand of Schwartz for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act.  Despite Angela's demand, Schwartz has failed and refused to pay Angela her final compensation.

40.    Schwartz's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count IV of the Complaint in her favor and against Howard Schwartz in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

Thomas Baker & Angela Baker

By: _____
One of their attorneys


Paul A. Greenberg, Esq.
Sean M. Anderson, Esq.
Aronberg Goldgehn Davis & Garmisa
330 North Wabash -. Suite 3000
Chicago, Illinois   60611
(312) 828-9600 Telephone
(312) 828-9635 Facsimile

10



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

July 5, 2005

Mr. Thomas Baker
Ms. Angela Baker
358 Carey Court
Bloomingdale, Illinois 60108

Dear Tom and Angela:

It gives me great pleasure to offer you each the position of Director of the Healthcare Group of Unicyn Financial Companies, LLC, a New Jersey limited liability company ("*Unicyn*"). In addition to confirming our offer, this letter sets out the terms and conditions of your employment which would be effective upon resignation from your current employer. It also outlines the major features of Unicyn's compensation, membership interest options and benefit plans and practices.

**Assumption of Duties:**  We propose that effective on or about July 5, 2005 you will each assume the position outlined reporting directly to Pat McGahren, President. Throughout the period of your employment hereunder you will each devote your full business time, attention and energy to the business of Unicyn.

**Base Salary:** (a) Throughout the period of his employment, Thomas Baker will be paid a base salary calculated at the rate of (x) $240,000 per year during the Ramp-Up Period (as defined below), and (y) $125,000 per year during the remainder of the term of his full-time employment, payable in accordance with Unicyn's standard payroll procedures and subject to applicable withholding taxes.

(b)      Throughout the period of her employment, Angela Baker will be paid a base salary calculated at the rate of (x) $120,000 per year during the Ramp-Up Period, and (y) $80,000 per year during the remainder of the term of her full-time employment, payable in accordance with Unicyn's standard payroll procedures and subject to applicable withholding taxes (collectively with the amount to be paid to Thomas Baker as set forth in paragraph (a) above, the "*Base Salary*").

**Commission Structure:** (a)      In addition to the Base Salary payable to you as set forth above and expressly subject to validation of your then current Base Salary as set forth in the next sentence, throughout the period of your employment you will be paid a commission in an aggregate amount equal to 40% of the "*Gross Profit*" earned by Unicyn on lease transactions generated primarily as a direct result of your individual efforts (the "*Commission*"). Notwithstanding anything to the contrary in this section, Unicyn will not have any obligation to make any Commission payments to you unless throughout the term of your employment you first validate your Base Salary by funding an aggregate of (x) $75,000 of Gross Profit per calendar month on your lease transactions during the Ramp-Up Period, and (y) $42,708 of Gross Profit per calendar month on your lease transactions during the remainder of the term of your full-time employment (each, the "*Threshold Gross Profit Amount*"), at which point Unicyn will begin to make Commission payments to you in an aggregate amount equal to 40% of the amount by which the aggregate Gross Profit earned by Unicyn on lease transactions generated primarily as a direct result of your individual efforts exceeds the aggregate Threshold Gross Profit Amount. Unicyn will "true up" the two accounts throughout the year.



*Commercial and Healthcare Financing*



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 836 • CLOSTER, NEW JERSEY 07624
(201) 767-0800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

(b)     Thus, by way of example and assuming no prior history of payments or lease transactions, if during the period of the first two consecutive calendar months of the employment term the Gross Profit on lease transactions generated primarily as a direct result of your individual efforts equals an aggregate of $125,000, Unicyn will not be required to make a Commission payment to you with respect to such two calendar month period as the aggregate Threshold Gross Profit Amount of $150,000 ($75,000 x 2 = $150,000) does not exceed the aggregate Gross Profit of $125,000. By way of further example, if the Gross Profit on lease transactions generated primarily as a direct result of your individual efforts during the next calendar month equals $175,000, Unicyn will be required to make a Commission payment to you in the amount of $30,000 ($75,000 x .40 = $30,000) with respect to such three month period. In such example, the Threshold Gross Profit Amount for such three month period equals $225,000 ($75,000 x 3 = $225,000), the aggregate Gross Profit equals $300,000 ($125,000 + $175,000 = $300,000) and the aggregate Gross Profit exceeds the Threshold Gross Profit Amount by $75,000 ($300,000 − $225,000 = $75,000).

(c)     For all purposes of this section, the period from July 5, 2005 through December 31, 2005 (the "*Ramp-Up Period*") shall be treated as a separate and distinct period. In the event that the aggregate amount of the Gross Profit earned on your lease transactions during the Ramp-Up Period exceeds the aggregate amount of the Threshold Gross Profit Amount for the Ramp-Up Period, Unicyn will make a Commission payment to you on or before January 15, 2006 in an aggregate amount equal to 40% of the amount by which the aggregate Gross Profit exceeds the aggregate Threshold Gross Profit Amount during the Ramp-Up Period.

(d)     In the event that during the Ramp-Up Period the aggregate amount of the Gross Profit earned on your lease transactions is less than the aggregate amount of the Threshold Gross Profit Amount (the "*Ramp-Up Deficit*"), such amount will be recovered by Unicyn against aggregate Commission payments due to you pursuant to this section commencing with Commission payments due in the calendar month of July, 2006, provided that in no event will Unicyn be entitled to recover more than one-twelfth (8.33%) of the Ramp-Up Deficit in any calendar month and further provided that in the event that one or both of you voluntarily terminate your employment relationship with Unicyn at any time, the entire amount of the Ramp-Up Deficit that has not been recovered by Unicyn as of the date of such termination shall immediately become due and payable in full.

(e)     For purposes of calculating the commissions payable to you pursuant to this section on an individual lease transaction, "*Gross Profit*" shall mean the total amount of all advance rentals, collected documentation fees, plus the present value of the remaining rental stream calculated based on Unicyn's funding costs; minus the equipment cost, any third party referral fees, taxes, Unicyn documentation/processing fees, and any extraordinary transaction costs such as UCC searches, tax or lien searches, equipment inspections or the like. The net difference will be the "Gross Profit" earned on the lease transaction for commission calculation purposes.

**Special Production Bonus:** In addition to the Commission payable to you pursuant to the immediately preceding section, Unicyn will pay to you a lump sum aggregate production bonus in the amount of $50,000, provided that you achieve an aggregate minimal funding threshold of $2,500,000 of Gross Profit production during the period commencing on the date hereof and ending on January 15, 2008. The special production bonus will be paid to you within 90 days of achievement of the Gross Profit production goal.

**Equity Plan:** (a) As a special inducement for you to join the Unicyn team, we will provide you with two separate opportunities to acquire Class B Units of Unicyn Financial Companies, LLC that will be granted and will vest based on your aggregate personal production. The two grants will be referred to as Membership Interest Option Grant One and Membership Interest Option Grant Two. Capitalized terms not otherwise used herein shall have the meaning ascribed to such terms in the Operating Agreement of Unicyn.



*Commercial and Healthcare Financing*



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

(b)    **Membership Interest Option Grant One:**    Effective as of the first day of your employment by Unicyn, you will be granted an option to purchase an aggregate of 500,000 Class B Units of Unicyn Financial

Companies, LLC (representing 5% of the currently issued and outstanding Units of Unicyn) at an exercise price of $.50 per Class B Unit. Membership Interest Option Grant One will vest and become exercisable over time based upon the aggregate "Gross Profit" earned on lease transactions generated primarily as a direct result of your individual efforts according to the following schedule:

Vesting of Membership Interest Option Grant One:
➡ $500,000 Gross Profit = 100,000 Class B Units vested
➡ $1 million Gross Profit = an additional 100,000 Class B Units vested
➡ $1.5 million Gross Profit = an additional 100,000 Class B Units vested
➡ $2.0 million Gross Profit = an additional 100,000 Class B Units vested
➡ $3.0 million Gross Profit = the final 100,000 Class B Units vested

Conditions of Membership Interest Option Grant One:
1) If Unicyn is sold prior to full vesting and you are both active full-time employees on the date of such sale, Membership Interest Option Grant One will fully vest such that you will have the immediate right to acquire all 500,000 Class B Units.
2) Membership Interest Option Grant One will cease vesting and will terminate (x) immediately upon the termination by you of your employment for any reason or the termination of both of you by Unicyn for "cause", (y) 30 days after the termination of the employment of both of you by Unicyn for any other reason, or (z) one year following the termination of your employment as a result of your death or disability.

(c)    **Membership Interest Option Grant Two:**    The second opportunity to earn equity in Unicyn Financial Companies, LLC will be determined based on the aggregate production of your individual office "Group" coupled with and compared to the entire team of five employees joining Unicyn in 2005. For purposes of Membership Interest Option Grant Two, the new employees will be broken into three Groups defined as the "Texas Group", the "West Coast Group" and the "Chicago Group." You will be known as the Chicago Group.

Membership Interest Option Grant Two will consist of a pool of options evidencing the right to purchase 1,500,000 Class B Units of Unicyn Financial Companies, LLC that will be allocated among and granted to the three Groups on a "pro-rata" basis based on Gross Profit earned minus direct expenses incurred by each Group from and after July 5, 2005 ("Contribution"). The pro-rata "Contribution" of each of the three Groups will establish the percentage of the 1,500,000 options to be awarded to each Group. For example,

➡ If Group 1 earns $1,000,000 per year PV Profit - $600,000 expenses = $400,000 Contribution annually x 5 years = $2,000,000 total Contribution;
➡ If Group 2 earns $1,000,000 per year PV Profit - $750,000 expenses = $250,000 Contribution annually x 5 years = $1,250,000 total Contribution; and
➡ If Group 3 earns $800,000 per year PV Profit - $500,000 expenses = $300,000 Contribution annually x 5 years = $1,500,000 total Contribution

In this example, the total contribution of the three Groups would be $2 million + $1.25 million + 1.5 million = $4.75 million. The available option pool would then be allocated pro rata based upon the aggregate Contribution of each Group as follows:



*Commercial and Healthcare Financing*



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 1D • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

⇒ Group 1 share = $2m / $4.75m = 42% of the 1,500,000 Class B Unit options;
⇒ Group 2 share = $1.25m / $4.75m = 26% of the 1,500,000 Class B Unit options; and
⇒ Group 3 share = $1.5m / $4.75m = 32% of the 1,500,000 Class B Unit options.

Membership Interest Option Grant Two will be granted at such time as the three Groups produce an aggregate Contribution of $4 million. Notwithstanding the foregoing, the allocation formula set forth above and the minimum aggregate required Contribution of $4 million each assumes that all three Groups remain active (i.e., all five new employees of the Unicyn remain as full-time employees) from July 5, 2005 until the date that Membership Interest Option Grant Two is awarded. If at any time during the period from July 5, 2005 until the date that Membership Interest Option Grant Two is awarded: (x) only two of the three Groups remain active, the Membership Interest Option Grant Two pool will be reduced from options to acquire 1,500,000 Class B Units to 1,000,000 Class B Units and the required aggregate Contribution will be reduced to $2,666,666 (expressly excluding any Contribution made by the withdrawing Group); or (y) only your Group remains active, the Membership Interest Option Grant Two pool will be reduced from options to acquire 1,500,000 Class B Units to 500,000 Class B Units and the required aggregate Contribution will be reduced to $1,333,333 (expressly excluding any Contribution made by the withdrawing Groups).

The options to be granted pursuant to Membership Interest Option Grant Two will vest and become exercisable in four equal annual installments commencing on the first anniversary of the date of grant at an exercise price per share equal to the fair market value of a Unit on the date of grant as then determined by the Managers of Unicyn. If a public company valuation exists on the date of grant, then the existing public price will be used to establish the exercise price per share.

(d)    **Early Vesting / Payout Feature:** If Unicyn is sold prior to prior to full vesting of Membership Interest Option Grant Two and both of you are active full-time employees on the date of such sale, then you will be paid a special conditional retention bonus in lieu of Membership Interest Option Grant Two in an amount equal to 25% of the aggregate capital appreciation actually realized on Membership Interest Option Grant One as of the date of the closing of such sale, with such amount to be paid to you in two equal annual installments (payable 90 days after each of the first two anniversaries of the closing) as an incentive for both of you to stay with Unicyn and the successor company for the two year period after any such sale.

For example, assuming on the date of sale your Membership Interest Option Grant Two has not yet vested, Membership Interest Option Grant One is fully vested and Unicyn is sold for $5.50 per Unit, you would realize aggregate capital appreciation and would be entitled to an aggregate conditional retention bonus of 25% of $5.00 per Unit ($5.50 - $.50 (assumed option exercise price) option value). This would translate into a realized equity value with respect to Membership Interest Option Grant One of 500,000 option Units x $5.00 of appreciation equaling a total appreciation value of $2,500,000. You would also be entitled to a conditional retention bonus of 25% of the capital appreciation (in this example of $2,500,000) which in this example would equal an aggregate of $625,000.

**Expenses / Equipment:** Unicyn will provide for the basic expenses of running your office, including phone, rent, internet and the required equipment. Based on the initial annual target funding volume of $26 million, we are anticipating not more than $60,000 in total expenses for your office in the first year of operations. Thereafter, we will typically target approximately 4% of your anticipated Gross Profit as annual operating expenses for your office. This amount will be reviewed by both parties each year based on volume and profitability and adjusted as appropriate.



Commercial and Healthcare Financing



**Unicyn Financial Companies**

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

**Benefit Plans:** Throughout the term of your employment you will be entitled to participate in all Unicyn company benefit plans in accordance with company policy. The details of the existing benefit plans will be provided to you. Our existing plans include basic medical coverage as well as a company 401-k plan.

**Reimbursement for Meeting Costs:** Once you join Unicyn, we will reimburse you for direct airfare and hotel costs incurred in connection with our April 2005 meeting in Houston, Texas.

**Executive Advisory Panel:** As part of your employment with Unicyn, you will be invited to participate as members of the Executive Advisory Panel (the "EAP"). The EAP will meet annually with the primary purpose of reviewing the growth initiatives and future direction of Unicyn. Your input as senior members of the team will be valuable to us as we evaluate strategic opportunities to ultimately realize the maximum value for the members of Unicyn through the growth of the business. We will also use the EAP to review current credit and operational issues, system issues, marketing and sales related issues with the goal of providing insights into improving the overall operations of the company.

**Cancellation Penalty:** Once you have accepted our offer of employment as set forth in this letter, we will begin to expend time and financial resources to prepare for your start date. This will include system costs, recruiting fees, printing, phone, rent commitments and legal expenses. If, after you accept our offer, you do not start with Unicyn and complete a minimum of 12 months of full-time employment, you will reimburse Unicyn for the out-of-pocket aggregate amount of all such expenses, provided that such amount will not exceed $25,000. You understand that we are relying on your written acceptance as authorization to commence our process of formally staffing up and preparing for your start date.

**Confidentiality of Agreement and Covenants:** (a)    It is agreed and understood that you will not disclose the terms or existence of this letter or any fact concerning its negotiation or implementation. You may, however, discuss the contents of this letter with your family, legal, recruiting and/or financial counselor. The terms of your employment and the membership unit option plans described herein are highly confidential and must be treated as such.

(b)    As an express condition to Unicyn's employment and the payment to you of the Base Salary, except as may be required by applicable law, during the term of your employment and for a period of three years subsequent to such employment, you will not, without the written consent of an authorized officer of Unicyn, disclose to any person, other than a person to whom disclosure is reasonably necessary or appropriate in connection with the performance of your duties on behalf, and for the benefit, of Unicyn, any material confidential information concerning Unicyn and/or its lessees, vendors, funding sources or business obtained by you while employed by Unicyn, including, without limitation, any information concerning Unicyn's referral fee structure, lessees, management, procedures and business plans; provided, however, that confidential information shall not include any information known generally to the public (other than as a result of unauthorized disclosure by you) or any information of a type not otherwise considered confidential by persons engaged in the equipment leasing business. Immediately upon the termination of your employment, you will return all documents and copies in your possession or under your control related to and/or developed in connection with your employment, including, without limitation, all lease transaction documents and records, manuals, internal documents and vendor and funding source lists. You acknowledge and agree that all such documents



*Commercial and Healthcare Financing*



# **Unicyn Financial Companies**

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX. (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

will be and remain the property of Unicyn, that you will not acquire any interest in such documents and that you will not remove any such documents or computer disks or material stored on a computer from the offices of Unicyn, except as necessary in connection with the performance of your duties.

(c)     As a further express condition to Unicyn's employment and the payment to you of the Base Salary, during the term of your employment and for a period of two years subsequent to the termination of your employment, you will not directly or indirectly solicit or otherwise contact any persons then employed by or associated with Unicyn, including, without limitation, independent contractors then offering equipment lease transactions to Unicyn and any such employee, person or independent contractor who was employed by or did business with the Unicyn within six months prior to the date that Unicyn seeks to enforce the restriction set forth in this section, for the purpose of inducing any such person to leave the employ of, or association with, Unicyn, nor shall you be employed by or otherwise become associated with any entity where you will participate, directly or indirectly, in the solicitation of or otherwise contact such persons for the purpose of inducing such persons to leave the employ of, or association with, Unicyn.

**At-Will-Employment:** Neither this letter nor the membership unit options to be granted to you hereunder is an employment contract and neither should be construed or interpreted as containing any guarantee of continued employment. The employment relationship between you and Unicyn is "at-will" and by mutual consent. This means that you as employees have the right to terminate your employment at any time and for any reason subject to reimbursement of costs outlined above. Likewise, Unicyn reserves the right to discontinue your employment with or without cause at any time and for any reason and without the payment to you of any severance amount whatsoever. Notwithstanding anything to the contrary contained in this section: (a) provided that you devote your full business time, attention and energy to the business of Unicyn, use your best efforts to promote the business of Unicyn and generate new lease transaction business exclusively on behalf of, and for the benefit of, Unicyn, and comply with your obligtions as set forth herein, throughout the Ramp-Up period Unicyn will not terminate your employment other than for cause; and (b) provided that Unicyn complies in all material respects with its obligations set forth in this letter, you will not terminate your full-time employment with Unicyn for any reason at any time during the Ramp-Up period.

**Proprietary Information and Employment Limitations:** By acceptance of the offer of employment set forth herein, you agree that (1) no trade secret or proprietary information belonging to any other person or entity, including your previous employer, will be disclosed or used by you in connection with your employment by Unicyn, and that no such information, whether in the form of documents, memoranda, software, drawings, etc. will be retained by you or brought with you to Unicyn, and (2) you have brought to Unicyn's attention and provided it with a copy of any agreement which may impact your future employment at Unicyn, including non-disclosure, non-competition, invention assignment agreements or agreements containing future work restrictions, and that you represent that you are not subject to any restrictions under any agreement of this type. In the event that at any time during the Ramp-Up period your present employer commences a legal proceeding against you or any other Unicyn employee(s) under your control and supervision asserting a claim based upon a breach of an existing non-solicitation covenant in an agreement entered into between you, any other Unicyn employee(s) under your control and supervision and such former employer, then in such event Unicyn will reimburse you and/or such other Unicyn employee(s) for legal fees and expenses incurred by you and/or such other Unicyn employee(s) in connection with the defense of such claim in an amount not to exceed an aggregate of $20,000 upon the presentation by you and/or such other Unicyn employee(s) of reasonable supporting documentation.



*Commercial and Healthcare Financing*



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

If you agree with the foregoing, and affirm that there are no agreements or other impediments that would prevent you from providing exclusive service to Unicyn, please send me an email with your acceptance, sign this letter in the space provided below and mail the original executed copy to me at your earliest convenience. This offer letter will remain valid until July 8, 2005.

We are excited about the opportunity we have to achieve breakthrough results together at Unicyn. As a company, we have never been better positioned to take full advantage of the opportunities for growth and success in our industry. I look forward to having you join us. If you have any questions, please do not hesitate to email or call me.

Sincerely,

UNICYN FINANCIAL COMPANIES, LLC

By: _____           By: _____
    Patrick McGahren                              Howard Schwartz
    President and Manager                         Manager

AGREED AND ACCEPTED:

_____                _____
Thomas Baker                                    Angela Baker
Date: July 6, 2005                              Date: July 6, 2005

Z:\org\Employment Agrees\Unicyn - Offer Letter Baker 062405.doc



Commercial and Healthcare Financing

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135                                                                                  80027.00200

**BY CERTIFIED MAIL, RETURN**
**RECEIPT REQUESTED & OVERNIGHT COURIER**
Mr. Patrick McGahren
Leaf Financial Corp.
1818 Market Street, 9th Floor
Philadelphia, PA 19103

   Re: Angela Baker

Dear Mr. McGahren:

   We represent Angela Baker ("Angela"). This letter constitutes the demand for payment of final compensation of Angela pursuant to the Illinois Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

   As you know, on June 19, 2006, Angela resigned from her position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of her employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of her employment.

   Under the terms of the Agreement, Unicyn was obligated to pay Angela her salary (wages plus commission) during the term of her employment, as well as commissions on transactions funded after the termination of her employment for which Angela was the procuring cause. Accordingly, we demand that you pay Angela as final compensation under the WPCA her gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions funded on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone

ARONBERG GOLDGEHN DAVIS & GARMISA
330 N. WABASH AVENUE · SUITE 3000
CHICAGO, ILLINOIS 60611

Mr. Patrick McGahren
January 30, 2007
Page 2

acting or purporting to act on its behalf, after June 19, 2006, for which Angela was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of her wages and commissions through June 19, 2006, is $29,314.92.

Because the information needed to calculate Angela's Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand that you immediately furnish Angela with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Angela's territory following her resignation.

If we do not receive a check made payable to Angela in the amount of $29,314.92 (less required federal and state withholdings), plus the Commissions and Vacation Pay (including supporting documentation), on or before February 5, 2007, we will institute litigation on behalf of Angela wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)

428596.v1

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135                                                                 80027.00200

**BY CERTIFIED MAIL, RETURN
RECEIPT REQUESTED & OVERNIGHT COURIER**
Mr. Patrick McGahren
Leaf Financial Corp.
1818 Market Street, 9th Floor
Philadelphia, PA 19103

       Re:    Thomas Baker

Dear Mr. McGahren:

      We represent Thomas Baker ("Thomas").  This letter constitutes the demand for payment of final compensation of Thomas pursuant to the Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

      As you know, on June 19, 2006, Thomas resigned from his position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of his employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of his employment.

      Under the terms of the Agreement, Unicyn was obligated to pay Thomas his salary (wages plus commission) during the term of his employment, as well as commissions on all transactions funded after the termination of his employment for which Thomas was the procuring cause.  Accordingly, we demand that you pay Thomas as final compensation under the WPCA his gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions consummated on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

Mr. Patrick McGahren
January 30, 2007
Page 2

acting or purporting to act on its behalf, after June 19, 2006, for which Thomas was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of his wages and commissions through June 19, 2006, is $24,843.58.

Because the information needed to calculate Thomas' Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand, pursuant to the WPCA, that you immediately furnish Thomas with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Thomas' territory following his resignation.

If we do not receive a check made payable to Thomas in the amount of $24,843.58 (less required federal and state withholdings), plus the Commissions and Vacation Pay (together with backup documentation), on or before February 5, 2007, we will institute litigation on behalf of Thomas wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,


Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)


428595.v1

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135                                                                80027.00200

**BY CERTIFIED MAIL, RETURN**
**RECEIPT REQUESTED & OVERNIGHT**
**COURIER**

Mr. Howard Schwartz
Unicyn Financial Companies, LLC
10 McKinley Street -- Suite 10
P.O. Box 536
Closter, New Jersey 07624

Dear Mr. Schwartz:

We represent Thomas Baker ("Thomas"). This letter constitutes the demand for payment of final compensation of Thomas pursuant to the Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

As you know, on June 19, 2006, Thomas resigned from his position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of his employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of his employment.

Under the terms of the Agreement, Unicyn was obligated to pay Thomas his salary (wages plus commission) during the term of his employment, as well as commissions on all transactions funded after the termination of his employment for which Thomas was the procuring cause. Accordingly, we demand that you pay Thomas as final compensation under the WPCA

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

Mr. Howard Schwartz
January 30, 2007
Page 2

his gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions consummated on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, after June 19, 2006, for which Thomas was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of his wages and commissions through June 19, 2006, is $24,843.58.

Because the information needed to calculate Thomas' Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand, pursuant to the WPCA, that you immediately furnish Thomas with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Thomas' territory following his resignation.

If we do not receive a check made payable to Thomas in the amount of $24,843.58 (less required federal and state withholdings), plus the Commissions and Vacation Pay (together with backup documentation), on or before February 5, 2007, we will institute litigation on behalf of Thomas wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)

428474

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135

80027.00200

**BY CERTIFIED MAIL, RETURN
RECEIPT REQUESTED & OVERNIGHT
COURIER**

Mr. Howard Schwartz
Unicyn Financial Companies, LLC
10 McKinley Street -- Suite 10
P.O. Box 536
Closter, New Jersey 07624

Dear Mr. Schwartz:

We represent Angela Baker ("Angela"). This letter constitutes the demand for payment of final compensation of Angela pursuant to the Illinois Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

As you know, on June 19, 2006, Angela resigned from her position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of her employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of her employment.

Under the terms of the Agreement, Unicyn was obligated to pay Angela her salary (wages plus commission) during the term of her employment, as well as commissions on transactions funded after the termination of her employment for which Angela was the procuring cause. Accordingly, we demand that you pay Angela as final compensation under the WPCA

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

Mr. Howard Schwartz
January 30, 2007
Page 2

her gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions funded on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, after June 19, 2006, for which Angela was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of her wages and commissions through June 19, 2006, is $29,314.92.

Because the information needed to calculate Angela's Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand that you immediately furnish Angela with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Angela's territory following her resignation.

If we do not receive a check made payable to Angela in the amount of $29,314.92 (less required federal and state withholdings), plus the Commissions and Vacation Pay (including supporting documentation), on or before February 5, 2007, we will institute litigation on behalf of Angela wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)

428431

# EXHIBIT 2

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | CCG N001-10M-1-07-05 (                    ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW_____ DIVISION

(Name all parties)

Thomas Baker and Angela Baker,

v.

Unicyn Financial Companies, LLC, a New Jersey limited
liability company,

}

2007L007320
CALENDAR ROOM T
TIME 00:00
Breach of Contract

No. _____

Please serve:
Howard Schwartz, as registered agent
Unicyn Financial Companies, LLC
10 McKinley Street, St. 10
Closter, New Jersey 07624

**SUMMONS**

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is
hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the
following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

| ❑ District 2 - Skokie | ❑ District 3 - Rolling Meadows | ❑ District 4 - Maywood |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ❑ District 5 - Bridgeview | ❑ District 6 - Markham | ❑ Child Support |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60426 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF
REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with
endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall
be returned so endorsed. This Summons may not be served later than 30 days after its date.

JUL 16 2007

| | WITNESS, _____, _____ |
|---|---|
| Atty. No.: 30375 | |
| Name: Howard J. Fishman, Aronberg Goldgehn, et al. | ...... BROWN |
| Atty. for: Plaintiffs | ....... CIRCUIT COURT |
| Address: 330 N. Wabash, St. 3000 | Clerk of Court |
| City/State/Zip: Chicago, Illinois 60611 | Date of service: _____ |
| Telephone: 312-828-9600 | (To be inserted by officer on copy left with defendant or other person) |
| Service by Facsimile Transmission will be accepted at: _____ | |
| | (Area Code) (Facsimile Telephone Number) |

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| Thomas Baker & Angela Baker, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | **CALENDAR/ROOM T** |
| Unicyn Financial Companies, LLC, a New | ) | TIME 00:00 |
| Jersey limited liability company, | ) | Breach of Contract |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AT LAW

Plaintiffs, Thomas Baker and Angela Baker, by their attorneys, Aronberg

Goldgehn Davis & Garmisa, for their Complaint at Law against Defendant,

Unicyn Financial Companies, LLC, a New Jersey limited liability company,

state as follows:

### PARTIES, JURISDICTION & VENUE

1.      Plaintiffs, Thomas Baker ("Thomas") and Angela Baker ("Angela")

(hereinafter collectively referred to as the "Bakers" or "Plaintiffs"), are

individuals residing in the State of Illinois.

2.      Plaintiffs are informed and believe that Defendant, Unicyn

Financial Companies, LLC, ("Unicyn"), is a limited liability company residing in

the State of New Jersey.

3.      Jurisdiction and venue are proper in Cook County, Illinois because

Unicyn employed, as that term is defined in the Illinois Wage Payment and

Collection Act (820 ILCS 115/1 *et seq.*) (the "Wage Act"), Plaintiffs in Cook

County, Illinois, violated the Wage Act in Cook County, Illinois, solicited Plaintiffs' employment in Cook County, Illinois, and paid wages to Plaintiffs here.

## **BACKGROUND**

4.     On July 6, 2005, Thomas and Angela signed an employment agreement (the "Employment Agreement") with Unicyn. (Ex. 1, the Employment Agreement.) At all relevant times, Unicyn was in the business of, among other things, providing specialized financial products to the healthcare industry and other commercial enterprises on a national basis.

5.     Shortly after executing the Employment Agreement, on or about July 15, 2005, Plaintiffs began working for Unicyn as sales representatives.

6.     Under the terms of the Employment Agreement, Unicyn was obligated to pay Thomas and Angela a base salary plus commissions (collectively referred to as "Wages") during the term of their employment, as well as commissions on all transactions funded after the termination of their employment for which they were the procuring cause.

7.     On June 19, 2006, Thomas and Angela resigned from their respective positions at Unicyn due to, among other things, material misrepresentations by individuals employed by Unicyn, leading up to the signing of the Employment Agreement, Unicyn's unilateral alteration of the material terms and conditions of Plaintiffs' employment, and Unicyn's repeated and systematic breaches of the Employment Agreement.

2

8.    As of the date of Thomas' resignation, Unicyn owed him gross Wages on funded transactions in the amount of $24,843.58. Unicyn owed Thomas additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, for which Thomas was the procuring cause. Thomas is unable to ascertain the precise amount of post-resignation commissions that he is owed because the information necessary to calculate that amount is in Defendants' control.

9.    As of the date of Angela's resignation, Unicyn owed her gross Wages on funded transactions in the amount of $29,314.92. Unicyn owed Angela additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, for which Angela was the procuring cause. Angela is unable to ascertain the precise amount of post-resignation commissions that she is owed because the information necessary to calculate that amount is in Defendants' control.

10.   On January 30, 2007, Thomas and Angela each sent Unicyn a demand for payment of the amount of Wages owed to them pursuant to the Wage Act and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.). (True and accurate copies of Thomas' and Angela's demand letters are attached hereto as Exhibit 2-3, respectively.) Despite

3

Plaintiffs' demands, Unicyn has failed to pay Plaintiffs the amount of the Wages that they are owed.

## Count I
### Violation of the Wage Act
### Thomas v. Unicyn

11.    Thomas restates, realleges and incorporates Paragraphs 1 through 10 of this Complaint as if fully set forth herein.

12.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

13.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

14.    Unicyn is deemed to be included as Thomas' "employer" pursuant to the Wage Act.

15.    Thomas' salary and commissions constitute "wages" under the WPCA.

4

16.    Thomas has made a written demand of Unicyn for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Thomas' demand, Unicyn has failed and refused to pay Thomas his final compensation.

17.    Unicyn's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count I of the Complaint in his favor and against Defendant, Unicyn Financial Companies, LLC, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

### Count II
### Violation of the Wage Act
### Angela v. Unicyn

18.    Angela restates, realleges and incorporates Paragraphs 1 through 10 of this Complaint as if fully set forth herein.

19.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

5

20.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

21.    Unicyn is deemed to be included as Angela's "employer" pursuant to the Wage Act.

22.    Angela's salary and commissions constitute "wages" under the WPCA.

23.    Angela has made a written demand of Unicyn for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Angela's demand, Unicyn has failed and refused to pay Angela her final compensation.

24.    Unicyn's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count II of the Complaint in her favor and against Defendant, Unicyn Financial Companies, LLC, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

6

Thomas Baker & Angela Baker

By:_____
One of their attorneys

Firm No. 30375
Paul A. Greenberg, Esq.
Howard J. Fishman, Esq.
Aronberg Goldgehn Davis & Garmisa
330 North Wabash -. Suite 3000
Chicago, Illinois   60611
(312) 828-9600 Telephone
(312) 828-9635 Facsimile

445720.1

7



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-3800 • FAX: (201) 767-8587 • 800-3-UNICYN • www.unicyn.com

July 5, 2005

Mr. Thomas Baker
Ms. Angela Baker
358 Carey Court
Bloomingdale, Illinois 60108

Dear Tom and Angela:

It gives me great pleasure to offer you each the position of Director of the Healthcare Group of Unicyn Financial Companies, LLC, a New Jersey limited liability company ("*Unicyn*"). In addition to confirming our offer, this letter sets out the terms and conditions of your employment which would be effective upon resignation from your current employer. It also outlines the major features of Unicyn's compensation, membership interest options and benefit plans and practices.

**Assumption of Duties:** We propose that effective on or about July 5, 2005 you will each assume the position outlined reporting directly to Pat McGahren, President. Throughout the period of your employment hereunder you will each devote your full business time, attention and energy to the business of Unicyn.

**Base Salary:** (a) Throughout the period of his employment, Thomas Baker will be paid a base salary calculated at the rate of (x) $240,000 per year during the Ramp-Up Period (as defined below), and (y) $125,000 per year during the remainder of the term of his full-time employment, payable in accordance with Unicyn's standard payroll procedures and subject to applicable withholding taxes.

(b) Throughout the period of her employment, Angela Baker will be paid a base salary calculated at the rate of (x) $120,000 per year during the Ramp-Up Period, and (y) $80,000 per year during the remainder of the term of her full-time employment, payable in accordance with Unicyn's standard payroll procedures and subject to applicable withholding taxes (collectively with the amount to be paid to Thomas Baker as set forth in paragraph (a) above, the "*Base Salary*").

**Commission Structure:** (a) In addition to the Base Salary payable to you as set forth above and expressly subject to validation of your then current Base Salary as set forth in the next sentence, throughout the period of your employment you will be paid a commission in an aggregate amount equal to 40% of the "Gross Profit" earned by Unicyn on lease transactions generated primarily as a direct result of your individual efforts (the "*Commission*"). Notwithstanding anything to the contrary in this section, Unicyn will not have any obligation to make any Commission payments to you unless throughout the term of your employment you first validate your Base Salary by funding an aggregate of (x) $75,000 of Gross Profit per calendar month on your lease transactions during the Ramp-Up Period, and (y) $42,708 of Gross Profit per calendar month on your lease transactions during the remainder of the term of your full-time employment (each, the "*Threshold Gross Profit Amount*"), at which point Unicyn will begin to make Commission payments to you in an aggregate amount equal to 40% of the amount by which the aggregate Gross Profit earned by Unicyn on lease transactions generated primarily as a direct result of your individual efforts exceeds the aggregate Threshold Gross Profit Amount. Unicyn will "true up" the two accounts throughout the year.



Commercial and Healthcare Financing

EXHIBIT



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 19 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5500 • FAX: (201) 767-5567 • 800-3-UNICYN • www.unicyn.com

(b)     Thus, by way of example and assuming no prior history of payments or lease transactions, if during the period of the first two consecutive calendar months of the employment term the Gross Profit on lease transactions generated primarily as a direct result of your individual efforts equals an aggregate of $125,000, Unicyn will not be required to make a Commission payment to you with respect to such two calendar month period as the aggregate Threshold Gross Profit Amount of $150,000 ($75,000 x 2 = $150,000) does not exceed the aggregate Gross Profit of $125,000. By way of further example, if the Gross Profit on lease transactions generated primarily as a direct result of your individual efforts during the next calendar month equals $175,000, Unicyn will be required to make a Commission payment to you in the amount of $30,000 ($75,000 x .40 = $30,000) with respect to such three month period. In such example, the Threshold Gross Profit Amount for such three month period equals $225,000 ($75,000 x 3 = $225,000), the aggregate Gross Profit equals $300,000 ($125,000 + $175,000 = $300,000) and the aggregate Gross Profit exceeds the Threshold Gross Profit Amount by $75,000 ($300,000 − $225,000 = $75,000).

(c)     For all purposes of this section, the period from July 5, 2005 through December 31, 2005 (the "*Ramp-Up Period*") shall be treated as a separate and distinct period. In the event that the aggregate amount of the Gross Profit earned on your lease transactions during the Ramp-Up Period exceeds the aggregate amount of the Threshold Gross Profit Amount for the Ramp-Up Period, Unicyn will make a Commission payment to you on or before January 15, 2006 in an aggregate amount equal to 40% of the amount by which the aggregate Threshold Gross Profit Amount during the Ramp-Up Period.

(d)     In the event that during the Ramp-Up Period the aggregate amount of the Gross Profit earned on your lease transactions is less than the aggregate amount of the Threshold Gross Profit Amount (the "*Ramp-Up Deficit*"), such amount will be recovered by Unicyn against aggregate Commission payments due to you pursuant to this section commencing with Commission payments due in the calendar month of July, 2006, provided that in no event will Unicyn be entitled to recover more than one-twelfth (8.33%) of the Ramp-Up Deficit in any calendar month and further provided that in the event that one or both of you voluntarily terminate your employment relationship with Unicyn at any time, the entire amount of the Ramp-Up Deficit that has not been recovered by Unicyn as of the date of such termination shall immediately become due and payable in full.

(e)     For purposes of calculating the commissions payable to you pursuant to this section on an individual lease transaction, "*Gross Profit*" shall mean the total amount of all advance rentals, collected documentation fees, plus the present value of the remaining rental stream calculated based on Unicyn's funding costs; minus the equipment cost, any third party referral fees, taxes, Unicyn documentation/processing fees, and any extraordinary transaction costs such as UCC searches, tax or lien searches, equipment inspections or the like. The net difference will be the "Gross Profit" earned on the lease transaction for commission calculation purposes.

**Special Production Bonus:** In addition to the Commission payable to you pursuant to the immediately preceding section, Unicyn will pay to you a lump sum aggregate production bonus in the amount of $50,000, provided that you achieve an aggregate minimal funding threshold of $2,500,000 of Gross Profit production during the period commencing on the date hereof and ending on January 15, 2008. The special production bonus will be paid to you within 90 days of achievement of the Gross Profit production goal.

**Equity Plan:** (a) As a special inducement for you to join the Unicyn team, we will provide you with two separate opportunities to acquire Class B Units of Unicyn Financial Companies, LLC that will be granted and will vest based on your aggregate personal production. The two grants will be referred to as Membership Interest Option Grant One and Membership Interest Option Grant Two. Capitalized terms not otherwise used herein shall have the meaning ascribed to such terms in the Operating Agreement of Unicyn.



Commercial and Healthcare Financing



# Unicyn Financial Companies

**10 McKINLEY STREET, SUITE 10 • P.O. BOX 538 • CLOSTER, NEW JERSEY 07624**
**(201) 767-5800 • FAX: (201) 767-5057 • 800-3-UNICYN • www.unicyn.com**

(b)    **Membership Interest Option Grant One:**   Effective as of the first day of your employment by Unicyn, you will be granted an option to purchase an aggregate of 500,000 Class B Units of Unicyn Financial

Companies, LLC (representing 5% of the currently issued and outstanding Units of Unicyn) at an exercise price of $.50 per Class B Unit. Membership Interest Option Grant One will vest and become exercisable over time based upon the aggregate "Gross Profit" earned on lease transactions generated primarily as a direct result of your individual efforts according to the following schedule:

**Vesting of Membership Interest Option Grant One:**
⇒ $500,000 Gross Profit = 100,000 Class B Units vested
⇒ $1 million Gross Profit = an additional 100,000 Class B Units vested
⇒ $1.5 million Gross Profit = an additional 100,000 Class B Units vested
⇒ $2.0 million Gross Profit = an additional 100,000 Class B Units vested
⇒ $3.0 million Gross Profit = the final 100,000 Class B Units vested

**Conditions of Membership Interest Option Grant One:**
1) If Unicyn is sold prior to full vesting and you are both active full-time employees on the date of such sale, Membership Interest Option Grant One will fully vest such that you will have the immediate right to acquire all 500,000 Class B Units.
2) Membership Interest Option Grant One will cease vesting and will terminate (x) immediately upon the termination by you of your employment for any reason or the termination of both of you by Unicyn for "cause", (y) 30 days after the termination of the employment of both of you by Unicyn for any other reason, or (z) one year following the termination of your employment as a result of your death or disability.

(c)    **Membership Interest Option Grant Two:**  The second opportunity to earn equity in Unicyn Financial Companies, LLC will be determined based on the aggregate production of your individual office "Group" coupled with and compared to the entire team of five employees joining Unicyn in 2005. For purposes of Membership Interest Option Grant Two, the new employees will be broken into three Groups defined as the "Texas Group", the "West Coast Group" and the "Chicago Group." You will be known as the Chicago Group.

Membership Interest Option Grant Two will consist of a pool of options evidencing the right to purchase 1,500,000 Class B Units of Unicyn Financial Companies, LLC that will be allocated among and granted to the three Groups on a "pro-rata" basis based on Gross Profit earned minus direct expenses incurred by each Group from and after July 5, 2005 ("Contribution"). The pro-rata "Contribution" of each of the three Groups will establish the percentage of the 1,500,000 options to be awarded to each Group. For example,

⇒ If Group 1 earns $1,000,000 per year PV Profit – $600,000 expenses = $400,000 Contribution annually x 5 years = $2,000,000 total Contribution;
⇒ If Group 2 earns $1,000,000 per year PV Profit – $750,000 expenses = $250,000 Contribution annually x 5 years = $1,250,000 total Contribution; and
⇒ If Group 3 earns $800,000 per year PV Profit – $500,000 expenses = $300,000 Contribution annually x 5 years = $1,500,000 total Contribution

In this example, the total contribution of the three Groups would be $2 million + $1.25 million + 1.5 million = $4.75 million. The available option pool would then be allocated pro rata based upon the aggregate Contribution of each Group as follows:



Commercial and Healthcare Financing



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5000 • FAX: (201) 767-5087 • 888-8-UNICYN • www.unicyn.com

⇒ Group 1 share = $2m / $4.75m = 42% of the 1,500,000 Class B Unit options;
⇒ Group 2 share = $1.25m / $4.75m = 26% of the 1,500,000 Class B Unit options; and
⇒ Group 3 share = $1.5m / $4.75m = 32% of the 1,500,000 Class B Unit options.

Membership Interest Option Grant Two will be granted at such time as the three Groups produce an aggregate Contribution of $4 million. Notwithstanding the foregoing, the allocation formula set forth above and the minimum aggregate required Contribution of $4 million each assumes that all three Groups remain active (i.e., all five new employees of the Unicyn remain as full-time employees) from July 5, 2005 until the date that Membership Interest Option Grant Two is awarded. If at any time during the period from July 5, 2005 until the date that Membership Interest Option Grant Two is awarded: (x) only two of the three Groups remain active, the Membership Interest Option Grant Two pool will be reduced from options to acquire 1,500,000 Class B Units to 1,000,000 Class B Units and the required aggregate Contribution will be reduced to $2,666,666 (expressly excluding any Contribution made by the withdrawing Group); or (y) only your Group remains active, the Membership Interest Option Grant Two pool will be reduced from options to acquire 1,500,000 Class B Units to 500,000 Class B Units and the required aggregate Contribution will be reduced to $1,333,333 (expressly excluding any Contribution made by the withdrawing Groups).

The options to be granted pursuant to Membership Interest Option Grant Two will vest and become exercisable in four equal annual installments commencing on the first anniversary of the date of grant at an exercise price per share equal to the fair market value of a Unit on the date of grant as then determined by the Managers of Unicyn. If a public company valuation exists on the date of grant, then the existing public price will be used to establish the exercise price per share.

(d)   **Early Vesting / Payout Feature:**  If Unicyn is sold prior to prior to full vesting of Membership Interest Option Grant Two and both of you are active full-time employees on the date of such sale, then you will be paid a special conditional retention bonus in lieu of Membership Interest Option Grant Two in an amount equal to 25% of the aggregate capital appreciation actually realized on Membership Interest Option Grant One as of the date of the closing of such sale, with such amount to be paid to you in two equal annual installments (payable 90 days after each of the first two anniversaries of the closing) as an incentive for both of you to stay with Unicyn and the successor company for the two year period after any such sale.

For example, assuming on the date of sale your Membership Interest Option Grant Two has not yet vested, Membership Interest Option Grant One is fully vested and Unicyn is sold for $5.50 per Unit, you would realize aggregate capital appreciation and would be entitled to an aggregate conditional retention bonus of 25% of $5.00 per Unit ($5.50 - $.50 (assumed option exercise price) option value). This would translate into a realized equity value with respect to Membership Interest Option Grant One of 500,000 option Units x $5.00 of appreciation equaling a total appreciation value of $2,500,000. You would also be entitled to a conditional retention bonus of 25% of the capital appreciation (in this example of $2,500,000) which in this example would equal an aggregate of $625,000.

**Expenses / Equipment:**  Unicyn will provide for the basic expenses of running your office, including phone, rent, internet and the required equipment. Based on the initial annual target funding volume of $26 million, we are anticipating not more than $60,000 in total expenses for your office in the first year of operations. Thereafter, we will typically target approximately 4% of your anticipated Gross Profit as annual operating expenses for your office. This amount will be reviewed by both parties each year based on volume and profitability and adjusted as appropriate.



Commercial and Healthcare Financing



# Unicyn Financial Companies

**19 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624**
**(201) 767-5600 • FAX: (201) 767-5657 • 800-3-UNICYN • www.unicyn.com**

**Benefit Plans:** Throughout the term of your employment you will be entitled to participate in all Unicyn company benefit plans in accordance with company policy. The details of the existing benefit plans will be provided to you. Our existing plans include basic medical coverage as well as a company 401-k plan.

**Reimbursement for Meeting Costs:** Once you join Unicyn, we will reimburse you for direct airfare and hotel costs incurred in connection with our April 2005 meeting in Houston, Texas.

**Executive Advisory Panel:** As part of your employment with Unicyn, you will be invited to participate as members of the Executive Advisory Panel (the "EAP"). The EAP will meet annually with the primary purpose of reviewing the growth initiatives and future direction of Unicyn. Your input as senior members of the team will be valuable to us as we evaluate strategic opportunities to ultimately realize the maximum value for the members of Unicyn through the growth of the business. We will also use the EAP to review current credit and operational issues, system issues, marketing and sales related issues with the goal of providing insights into improving the overall operations of the company.

**Cancellation Penalty:** Once you have accepted our offer of employment as set forth in this letter, we will begin to expend time and financial resources to prepare for your start date. This will include system costs, recruiting fees, printing, phone, rent commitments and legal expenses. If, after you accept our offer, you do not start with Unicyn and complete a minimum of 12 months of full-time employment, you will reimburse Unicyn for the out-of-pocket aggregate amount of all such expenses, provided that such amount will not exceed $25,000. You understand that we are relying on your written acceptance as authorization to commence our process of formally staffing up and preparing for your start date.

**Confidentiality of Agreement and Covenants: (a)**   It is agreed and understood that you will not disclose the terms or existence of this letter or any fact concerning its negotiation or implementation. You may, however, discuss the contents of this letter with your family, legal, recruiting and/or financial counselor. The terms of your employment and the membership unit option plans described herein are highly confidential and must be treated as such.

**(b)**   As an express condition to Unicyn's employment and the payment to you of the Base Salary, except as may be required by applicable law, during the term of your employment and for a period of three years subsequent to such employment, you will not, without the written consent of an authorized officer of Unicyn, disclose to any person, other than a person to whom disclosure is reasonably necessary or appropriate in connection with the performance of your duties on behalf, and for the benefit, of Unicyn, any material confidential information concerning Unicyn and/or its lessees, vendors, funding sources or business obtained by you while employed by Unicyn, including, without limitation, any information concerning Unicyn's referral fee structure, lessees, management, procedures and business plans; provided, however, that confidential information shall not include any information known generally to the public (other than as a result of unauthorized disclosure by you) or any information of a type not otherwise considered confidential by persons engaged in the equipment leasing business. Immediately upon the termination of your employment, you will return all documents and copies in your possession or under your control related to and/or developed in connection with your employment, including, without limitation, all lease transaction documents and records, manuals, internal documents and vendor and funding source lists. You acknowledge and agree that all such documents



Commercial and Healthcare Financing



# UFC
## Unicyn Financial Companies
10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5500 • FAX. (201) 767-5567 • 800-3-UNICYN • www.unicyn.com

will be and remain the property of Unicyn, that you will not acquire any interest in such documents and that you will not remove any such documents or computer disks or material stored on a computer from the offices of Unicyn, except as necessary in connection with the performance of your duties.

(c)      As a further express condition to Unicyn's employment and the payment to you of the Base Salary, during the term of your employment and for a period of two years subsequent to the termination of your employment, you will not directly or indirectly solicit or otherwise contact any persons then employed by or associated with Unicyn, including, without limitation, independent contractors then offering equipment lease transactions to Unicyn and any such employee, person or independent contractor who was employed by or did business with the Unicyn within six months prior to the date that Unicyn seeks to enforce the restriction set forth in this section, for the purpose of inducing any such person to leave the employ of, or association with, Unicyn, nor shall you be employed by or otherwise become associated with any entity where you will participate, directly or indirectly, in the solicitation of or otherwise contact such persons for the purpose of inducing such persons to leave the employ of, or association with, Unicyn.

**At-Will-Employment:**  Neither this letter nor the membership unit options to be granted to you hereunder is an employment contract and neither should be construed or interpreted as containing any guarantee of continued employment. The employment relationship between you and Unicyn is "at-will" and by mutual consent. This means that you as employees have the right to terminate your employment at any time and for any reason subject to reimbursement of costs outlined above. Likewise, Unicyn reserves the right to discontinue your employment with or without cause at any time and for any reason and without the payment to you of any severance amount whatsoever. Notwithstanding anything to the contrary contained in this section: (a) provided that you devote your full business time, attention and energy to the business of Unicyn, use your best efforts to promote the business of Unicyn and generate new lease transaction business exclusively on behalf of, and for the benefit of, Unicyn, and comply with your obligations as set forth herein, throughout the Ramp-Up period Unicyn will not terminate your employment other than for cause; and (b) provided that Unicyn complies in all material respects with its obligations set forth in this letter, you will not terminate your full-time employment with Unicyn for any reason at any time during the Ramp-Up period.

**Proprietary Information and Employment Limitations:**  By acceptance of the offer of employment set forth herein, you agree that (1) no trade secret or proprietary information belonging to any other person or entity, including your previous employer, will be disclosed or used by you in connection with your employment by Unicyn, and that no such information, whether in the form of documents, memoranda, software, drawings, etc. will be retained by you or brought with you to Unicyn, and (2) you have brought to Unicyn's attention and provided it with a copy of any agreement which may impact your future employment at Unicyn, including non-disclosure, non-competition, invention assignment agreements or agreements containing future work restrictions, and that you represent that you are not subject to any restrictions under any agreement of this type. In the event that at any time during the Ramp-Up period your present employer commences a legal proceeding against you or any other Unicyn employee(s) under your control and supervision asserting a claim based upon a breach of an existing non-solicitation covenant in an agreement entered into between you, any other Unicyn employee(s) under your control and supervision and such former employer, then in such event Unicyn will reimburse you and/or such other Unicyn employee(s) for legal fees and expenses incurred by you and/or such other Unicyn employee(s) in connection with the defense of such claim in an amount not to exceed an aggregate of $20,000 upon the presentation by you and/or such other Unicyn employee(s) of reasonable supporting documentation.



Commercial and Healthcare Financing



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 787-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

If you agree with the foregoing, and affirm that there are no agreements or other impediments that would prevent you from providing exclusive service to Unicyn, please send me an email with your acceptance, sign this letter in the space provided below and mail the original executed copy to me at your earliest convenience. This offer letter will remain valid until July 8, 2005.

We are excited about the opportunity we have to achieve breakthrough results together at Unicyn. As a company, we have never been better positioned to take full advantage of the opportunities for growth and success in our industry. I look forward to having you join us. If you have any questions, please do not hesitate to email or call me.

Sincerely,

UNICYN FINANCIAL COMPANIES, LLC

By: _____          By: _____
    Patrick McGahren                              Howard Schwartz
    President and Manager                          Manager

AGREED AND ACCEPTED:

Thomas Baker
Date: July 6, 2005

Angela Baker
Date: July 6, 2005

Z:\org\Employment Agrees\Unicyn - Offer Letter Baker 062405.doc



Commercial and Healthcare Financing

ARNBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135

80027.00200

**BY CERTIFIED MAIL, RETURN
RECEIPT REQUESTED & OVERNIGHT
COURIER**

Mr. Howard Schwartz
Unicyn Financial Companies, LLC
10 McKinley Street -- Suite 10
P.O. Box 536
Closter, New Jersey 07624

Dear Mr. Schwartz:

   We represent Thomas Baker ("Thomas").  This letter constitutes the demand for payment of final compensation of Thomas pursuant to the Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

   As you know, on June 19, 2006, Thomas resigned from his position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of his employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of his employment.

   Under the terms of the Agreement, Unicyn was obligated to pay Thomas his salary (wages plus commission) during the term of his employment, as well as commissions on all transactions funded after the termination of his employment for which Thomas was the procuring cause.  Accordingly, we demand that you pay Thomas as final compensation under the WPCA

**EXHIBIT**

2

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

Mr. Howard Schwartz
January 30, 2007
Page 2

his gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions consummated on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, after June 19, 2006, for which Thomas was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of his wages and commissions through June 19, 2006, is $24,843.58.

Because the information needed to calculate Thomas' Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand, pursuant to the WPCA, that you immediately furnish Thomas with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Thomas' territory following his resignation.

If we do not receive a check made payable to Thomas in the amount of $24,843.58 (less required federal and state withholdings), plus the Commissions and Vacation Pay (together with backup documentation), on or before February 5, 2007, we will institute litigation on behalf of Thomas wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)

428474

ARONBERG GOLDGEHN DAVIS & GARMISA

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135                                            80027.00200

**BY CERTIFIED MAIL, RETURN
RECEIPT REQUESTED & OVERNIGHT
COURIER**

Mr. Howard Schwartz
Unicyn Financial Companies, LLC
10 McKinley Street -- Suite 10
P.O. Box 536
Closter, New Jersey 07624

Dear Mr. Schwartz:

We represent Angela Baker ("Angela"). This letter constitutes the demand for payment of final compensation of Angela pursuant to the Illinois Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

As you know, on June 19, 2006, Angela resigned from her position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of her employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of her employment.

Under the terms of the Agreement, Unicyn was obligated to pay Angela her salary (wages plus commission) during the term of her employment, as well as commissions on transactions funded after the termination of her employment for which Angela was the procuring cause. Accordingly, we demand that you pay Angela as final compensation under the WPCA

**EXHIBIT**

3

ARNSBERG GOLDGEHN DAVIS & GARMISA

Mr. Howard Schwartz
January 30, 2007
Page 2

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

her gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions funded on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, after June 19, 2006, for which Angela was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of her wages and commissions through June 19, 2006, is $29,314.92.

Because the information needed to calculate Angela's Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand that you immediately furnish Angela with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Angela's territory following her resignation.

If we do not receive a check made payable to Angela in the amount of $29,314.92 (less required federal and state withholdings), plus the Commissions and Vacation Pay (including supporting documentation), on or before February 5, 2007, we will institute litigation on behalf of Angela wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)

428431

# EXHIBIT 3

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

BAKER

v.

UNICYN FINANCIAL
MORTGAGE COS., LLC

No. 07 L 7380

### AGREED ORDER

THIS CAUSE COMING TO BE HEARD ON
THE PARTIES' JOINT MOTION TO CONSOLIDATE
THIS MATTER INTO THE CASE STYLED
BAKER v. MCGAHREN, 07 L 1900, DUE
NOTICE HAVING BEEN GIVEN AND THE COURT
BEING FULLY ADVISED; IT IS HEREBY ORDERED:
SAID MOTION IS GRANTED. THIS MATTER
IS CONSOLIDATED INTO BAKER v. MCGAHREN,
07 L 1900

Atty. No.: 30375
Name: H FISHMAN / ARONBERG
Atty. for: BAKER          GOLDGEHN
Address: 330 N. WABASH #3000
City/State/Zip: CHICAGO, IL 60611
Telephone: 312 828 9600

ENTERED:

Dated: 9/4 , 07

JUDGE DONALD J. SURIANO

Judge                    SEP 04 2007    Judge's No.

Circuit Court - 1717

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

THOMAS BAKER & ANGELA BAKER,

        Plaintiffs,

        v.

PATRICK MCGAHREN & HOWARD
SCHWARTZ, AND UNICYN FINANCIAL
COMPANIES, LLC, a NEW JERSEY
LIMITED LIABILITY COMPANY,

        Defendants.

Case No. 2007 L 1900

## NOTICE OF MOTION

To:

| | |
|---|---|
| Diane Sabol, Esq.<br>Mayer, Brown Rowe & Maw LLP<br>71 S. Wacker Drive<br>Chicago, Illinois 60606 | Randall C. Schauer, Esq.<br>Fox Rothschild LLP<br>747 Constitution Drive, St. 100<br>PO Box 673<br>Exton, Pennsylvania 19341 |

PLEASE TAKE NOTICE that on the **16th** day of **October, 2007** at **9:30 a.m.** I shall appear before the **Honorable Allen S. Goldberg** in **Room 2303** of the Richard J. Daley Center, 50 W. Washington, Chicago, Illinois and then and there present *Plaintiff's Motion for Leave to File Their First Amended Complaint at Law*; a true and correct copy of said motion is hereby served upon you.

THOMAS BAKER & ANGELA BAKER

By: _____
      One of their attorneys

Howard J. Fishman, Esq.
Paul A. Greenberg, Esq.
Aronberg Goldgehn Davis & Garmisa
330 North Wabash, Suite 3000
Chicago, Illinois 60611
Phone (312) 828-9600
Attorney No. 30375

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Illinois code of Civil Procedure, Shelly Dziadon, a non-attorney, certifies that she served copies of this notice and accompanying pleading by:

[   ] faxing a copy consisting of Counsel of Record from Suite 3000, 330 North Wabash Avenue, Chicago, Illinois at or before 5:00 p.m. on October 11, 2007.

[ X ] mailing same to the persons listed above at their addresses set forth hereinabove, in the United States Mail Chute at 330 North Wabash Avenue, Chicago, Illinois  60611 at or before 5:00 p.m., postage prepaid; first class mail, this 11th day of October, 2007.

[ X ] hand delivery at or before 5:00 p.m. on this 11th day of October, 2007 to Diane Sabol, Esq., Mayer, Brown Rowe & Maw LLP, 71 S. Wacker Drive, Chicago, Illinois 60606.


_____
Shelly M. Dziadon


Howard J. Fishman, Esq.
Paul A. Greenberg, Esq.
Aronberg Goldgehn Davis & Garmisa
330 North Wabash, Suite 3000
Chicago, Illinois  60611
Phone (312) 828-9600
Attorney No. 30375

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| Thomas Baker & Angela Baker, | ) |
| Plaintiffs, | ) |
| v. | )     No. 07 L 1900 |
| Patrick McGahren, Howard Schwartz and Unicyn Financial Companies, LLC, a New Jersey limited liability company, | ) |
| Defendant. | ) |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR FIRST AMENDED COMPLAINT AT LAW

Plaintiffs, Thomas Baker and Angela Baker (the "Bakers"), by their attorneys, Aronberg Goldgehn Davis & Garmisa, move for leave to file their First Amended Complaint against Defendants, Patrick McGahren, Howard Schwartz and Unicyn Financial Companies, LLC, a New Jersey limited liability company (sometimes collectively referred to as "Defendants"). In support of their motion, the Bakers state as follows:

1. On September 4, 2007, Judge Suriano entered an agreed order, attached as Exhibit 1, consolidating the matter of *Baker v. Unicyn Financial Companies, LLC*, 07 L 7380 into this lawsuit.

2. For the ease of the Parties and the Court, Plaintiffs have prepared an amended complaint combining the causes of action asserted in the separate lawsuits into a single pleading.

3. In addition, Plaintiffs have updated the damages sought and have

added counts for breach of contract and fraud against Defendants.

4.     Discovery in this matter is in its initial stage and Defendants would not be prejudiced by the granting of this motion.

5.     A copy of the proposed First Amended Complaint is attached as Exhibit 2.

WHEREFORE, Plaintiffs/Counter-Defendants, Thomas Baker and Angela Baker, request that they be granted leave to file their First Amended Complaint at Law, *instanter*, and that the Court award them any other or further relief that the Court deems just and fair.

Thomas Baker & Angela Baker

By: _____
One of their attorneys

Firm No. 30375
Paul A. Greenberg, Esq.
Howard J. Fishman, Esq.
Aronberg Goldgehn Davis & Garmisa
330 North Wabash -. Suite 3000
Chicago, Illinois   60611
(312) 828-9600 Telephone
(312) 828-9635 Facsimile
454223.1

Order

CCG N002-300M-2/24/05 (

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

BAKER

v.

UNICYN FINANCIAL
MCGAHREN COS., LLC

No. 07 L 7380

## AGREED ORDER

THIS CAUSE COMING TO BE HEARD ON
THE PARTIES' JOINT MOTION TO CONSOLIDATE
THIS MATTER INTO THE CASE STYLED
BAKER V. MCGAHREN, 07 L 1900, DUE
NOTICE HAVING BEEN GIVEN AND THE COURT
BEING FULLY ADVISED; IT IS HEREBY ORDERED:
SAID MOTION IS GRANTED. THIS MATTER
IS CONSOLIDATED INTO BAKER V. MCGAHREN,
07 L 1900

Atty. No.: 30375

Name: H FISHMAN / ARONBERG

Atty. for: BAKER       GOLDGEHN

Address: 330 N. WABASH #3000

City/State/Zip: CHICAGO, IL 60611

Telephone: 312 828 9600

ENTERED:

Dated: 9/4 , 07

**JUDGE DONALD J. SURIANO**

Judge          SEP 04 2007          Judge's No.

**DOROTHY BROWN, CLERK OF T~~H~~[    ]T OF COOK COUNTY, ILLINOIS**

Circuit Court - 1717

EXHIBIT

1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| Thomas Baker & Angela Baker,<br><br>       Plaintiffs,<br><br>       v.<br><br>Patrick McGahren, Howard Schwartz and<br>Unicyn Financial Companies, LLC, a New<br>Jersey limited liability company,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)    No. 07 L 1900<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT AT LAW

Plaintiffs, Thomas Baker and Angela Baker, by their attorneys, Aronberg Goldgehn Davis & Garmisa, for their First Amended Complaint against Defendants, Patrick McGahren, Howard Schwartz and Unicyn Financial Companies, LLC, a New Jersey limited liability company (sometimes collectively referred to as "Defendants"), state as follows:

## PARTIES, JURISDICTION & VENUE

1.    Plaintiffs, Thomas Baker ("Tom") and Angela Baker ("Angela") (hereinafter collectively referred to as the "Bakers" or "Plaintiffs"), are individuals residing in the State of Illinois.

2.    Plaintiffs are informed and believe that Defendant, Patrick McGahren ("McGahren"), is an individual residing in the State of Pennsylvania.

3.    Plaintiffs are informed and believe that Defendant, Howard Schwartz ("Schwartz"), is an individual residing in the State of New Jersey.

EXHIBIT

2

4.    Plaintiffs are informed and believe that Defendant, Unicyn Financial Companies, LLC, ("Unicyn"), is a limited liability company residing in the State of New Jersey.

5.    Jurisdiction and venue are proper in Cook County, Illinois because Defendants employed, as that term is defined in the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.*) (the "Wage Act"), Plaintiffs in Cook County, Illinois, violated the Wage Act in Cook County, Illinois, solicited Plaintiffs' employment in Cook County, Illinois, paid wages to Plaintiffs here, breached a contract in Illinois and committed torts here.

## BACKGROUND

6.    Prior to joining Unicyn, Angela and Tom (sometimes collectively referred to as the "Bakers"), were employed by HPSC, Inc. ("HPSC") as sales representatives. Tom had been employed by HPSC since 1995, and Angela since 2003.

7.    HPSC provides financing to healthcare professionals (internists, radiologists, OB/GYN doctors, ophthalmologists, dermatologists, dentists, chiropractors, cosmetic surgeons, veterinarians, orthopedists and community health practitioners) throughout the United States.  It provides both medical equipment financing as well as non-equipment financing, such as practice finance, leasehold improvements and debt consolidation.  Unicyn was a competitor of HPSC's in this industry.

2

8.    At all times relevant hereto, McGahren and Schwartz, were the President and Chief Executive Officer of Unicyn, respectively.  McGahren and Schwartz were principally responsible for all of Unicyn's business and financial decisions, including ensuring that Unicyn paid Plaintiffs' wages.

9.    In early 2005, McGahren and Schwartz began negotiating with the Bakers, as well as several of their colleagues at HPSC, to join Unicyn.

10.    Although the base compensation and benefits offered to the Bakers was significantly less than what they were earning at HPSC, Defendants offered the Bakers and their colleagues something that they did not have at HPSC, *i.e.*, the opportunity to acquire an equity stake in Unicyn.

11.    Specifically, the Bakers' employment agreement (the "Employment Agreement") with Unicyn provided that, "[a]s a **special inducement** for you to join the Unicyn team, we will provide you with two separate opportunities to acquire Class B units.  The two grants will be referred to as Membership Interest Option Grant One and Membership Interest Option Grant Two." (Ex. 1, the Employment Agreement, p.2.)

12.    The Bakers' opportunity to acquire an equity interest in Unicyn under Membership Interest Option Grant Two was, in part, tied to the length of time that Unicyn remained in business.

13.    With respect to Membership Interest Option Grant One, the Bakers were granted the immediate right to acquire 500,000 Class B Units "[i]f Unicyn

3

[w]as sold prior to full vesting and [the Bakers were] both full-time employees on the date of such sale ..." (Ex. 1, p.3.)

14.    At the time, Defendants were attempting to induce the Bakers and their colleagues to leave HPSC and join Unicyn, the Bakers are informed and believe that Defendants were simultaneously attempting to sell Unicyn to LEAF. Financial Corporation ("Leaf").

15.    The Bakers were unaware that Defendants were attempting to sell Unicyn at the time that they were induced to join Unicyn and would never have joined Unicyn had Defendants disclosed these facts to them.

16.    Defendants' true purpose and motivation for hiring the Bakers and their colleagues was, on information and belief, to make Unicyn more attractive to Leaf.

17.    Defendants further represented to the Bakers and their colleagues that Unicyn had a vast array of resources at its disposal to fund the numerous loans that the Bakers and their colleagues anticipated procuring.

18.    Defendants also represented to the Bakers that Unicyn's legal counsel had reviewed the Bakers' employment agreement with HPSC and that the Bakers would not be breaching that agreement by joining Unicyn. To assure the Bakers of this fact, Unicyn agreed to compensate the Bakers for a specified amount of attorney's incurred by the Bakers in defending any lawsuit brought by HPSC.

4

19.    On July 6, 2005, Thomas and Angela signed an employment agreement (the "Employment Agreement") with Unicyn. (Ex. 1, the Employment Agreement.) At all relevant times, Unicyn was in the business of, among other things, providing specialized financial products to the healthcare industry and other commercial enterprises on a national basis.

20.    Shortly after executing the Employment Agreement, on or about July 15, 2005, Plaintiffs began working for Unicyn as sales representatives.

21.    Under the terms of the Employment Agreement, Unicyn was obligated to pay Thomas and Angela a base salary plus commissions (collectively referred to as "Wages") during the term of their employment, as well as commissions on all transactions funded after the termination of their employment for which they were the procuring cause.

22.    Defendants multiple representations to the Bakers all turned out to be completely false. Shortly after joining Unicyn, HPSC, which had been acquired by General Electric, sued not only the Bakers, but also the Bakers' colleagues and Unicyn in Texas and California.

23.    In these lawsuits, HPSC sought to enjoin the Bakers, their colleagues and Unicyn from, *inter alia*, soliciting the business of any customers with whom the former HPSC employees did business while at HPSC.

24.    The Bakers are informed and believe that Unicyn's negotiations with Leaf were put on hold while HPSC's lawsuit was pending.

25.   In or about January 2006, Unicyn settled all of the lawsuits.  As a result, however, the Bakers ability to solicit business was curtailed for a period of time.  The specific terms of the settlement agreement, and the details of the burdens placed on the Bakers, are the subject of a confidentiality agreement.

26.   As a result of the lawsuits, the Bakers incurred significant legal fees and costs as a result of the litigation for which they were not reimbursed.

27.   Nevertheless, the Bakers continued to work diligently for Unicyn, procuring numerous loans for it.

28.   By the Fall of 2005, Unicyn began experiencing difficulty funding the loans procured by the Bakers and their colleagues. These difficulties increased over time.

29.   The Bakers ultimately discovered that the vast resources which Defendants represented Unicyn as having were really comprised of not much more than a line of credit. And, once that line of credit was exhausted, Unicyn's ability to fund loans dramatically diminished.

30.   The Bakers lost actual and potential clients as a result of Unicyn's inability to fund loans procured by them.

31.   Not long after the settlement agreement in the lawsuits was consummated, the Bakers are informed and believe that Unicyn began negotiating anew with Leaf.

32.   On or about April 4, 2006, Leaf acquired Unicyn.

6

33.    The day before Leaf's acquisition of Unicyn, Defendants informed the Bakers, both orally and in writing, that they must agree to a dramatic reduction in the nature, scope, and amount of their compensation package under Employment Agreement if they wanted to retain their positions.

34.    To this end, Schwartz tendered to the Bakers a draft agreement (the "Proposed Employment Agreement") (Ex. 2) for them to review.

35.    Although the Proposed Employment Agreement purported to be between Unicyn and the Bakers, it was Leaf that retained the control to terminate it. (Ex. 2, p.1.)

36.    Defendants denied to the Bakers, however, that Leaf had acquired Unicyn, representing instead that the parties had simply embarked on a joint venture.

37.    The Bakers, however, had learned through independent sources that Unicyn was sold to Leaf. Indeed, Leaf press releases and various SEC filings of Leaf's parent company confirmed the Bakers' belief.

38.    Thus, the Bakers requested that Defendants provide them with certain specific information concerning the transaction between Leaf and Unicyn so that they could determine whether to exercise their option to acquire 500,000 Class B Units of Unicyn.

39.    Although Defendants eventually furnished some of the information requested by the Bakers, they refused to provide much of the key information needed to enable the Bakers to determine whether to exercise their rights.

7

Additionally, Defendants continued to represent to the Bakers that Unicyn had not been sold.

40. By this point in time, the Bakers had realized that they had been duped by Defendants into leaving their employment at HPSC and believed that Defendants hired the Bakers and their colleagues solely to make Unicyn appear to be a major player in the healthcare finance sector and, thus, further Defendants own selfish motives.

41. On or about June 19, 2006, the Bakers resigned their positions with Unicyn because of Defendants' material misrepresentations leading up to their execution of the Employment Agreement and Unicyn's repeated and systematic breaches of the Employment Agreement and its unilateral alteration of the material terms and conditions of their employment. (Ex. 3, the letter of June 21, 2006.)

42. Almost immediately thereafter, Defendants, without the Bakers' permission, debited the Bakers checking accounts in the amount of their last draws, in violation of state and federal banking and privacy laws.

43. As of the date of Thomas' resignation, Unicyn owed him gross Wages on funded transactions in the amount of at least $67,343. Unicyn owed Thomas additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, for which Thomas was the procuring cause. Thomas is unable to ascertain the precise amount of post-

8

resignation commissions that he is owed because the information necessary to calculate that amount is in Defendants' control.

44.   As of the date of Angela's resignation, Unicyn owed her gross Wages on funded transactions in the amount of at least $29,314. Unicyn owed Angela additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, for which Angela was the procuring cause. Angela is unable to ascertain the precise amount of post-resignation commissions that she is owed because the information necessary to calculate that amount is in Defendants' control.

45.   On January 30, 2007, Thomas and Angela each sent McGahren, Schwartz and Unicyn a demand for payment of the amount of Wages owed to them pursuant to the Wage Act and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.). (True and accurate copies of Thomas' and Angela's demand letters are attached hereto as Exhibit 2-3, respectively.) Despite Plaintiffs' demands, Unicyn has failed to pay Plaintiffs the amount of the Wages that they are owed.

### Count I
### Violation of the Wage Act
### Thomas v. McGahren

46.   Thomas restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 43 and 45 of this Amended Complaint as if fully set forth herein.

9

47.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

48.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

49.    Because McGahren knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Thomas the Wages he earned, McGahren is deemed to be Thomas' "employer" pursuant to the Wage Act.

50.    Thomas' salary and commissions constitute "wages" under the WPCA.

51.    Thomas has made a written demand of McGahren for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Thomas' demand, McGahren has failed and refused to pay Thomas his final compensation.

10

52.    McGahren's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count I of the Amended Complaint in his favor and against Defendant, Patrick McGahren, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

## Count II
## Violation of the Wage Act
## Angela v. McGahren

53.    Angela restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 44 and 45 of this Amended Complaint as if fully set forth herein.

54.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

55.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation,

11

if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

56.    Because McGahren knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Angela the Wages she earned, McGahren is deemed to be Angela's "employer" pursuant to the Wage Act.

57.    Angela's salary and commissions constitute "wages" under the WPCA.

58.    Angela has made a written demand of McGahren for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Angela's demand, McGahren has failed and refused to pay Angela her final compensation.

59.    McGahren's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count II of the Complaint in her favor and against Patrick McGahren in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

## Count III
## Violation of the Wage Act
## Thomas v. Schwartz

12

60.    Thomas restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 43 and 45 of this Amended Complaint as if fully set forth herein.

61.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

62.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

63.    Because Schwartz knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Thomas the Wages he earned, Schwartz is deemed to be Thomas' "employer" pursuant to the Wage Act.

64.    Thomas' salary and commissions constitute "wages" under the WPCA.

65.    Thomas has made a written demand of Schwartz for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite

13

Thomas' demand, Schwartz has failed and refused to pay Thomas his final compensation.

66.    Schwartz's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count III of the Amended Complaint in his favor and against Defendant, Howard Schwartz, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

## Count IV
## Violation of the Wage Act
## Angela v. Schwartz

67.    Angela restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 44 and 45 of this Amended Complaint as if fully set forth herein.

68.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

69.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay

14

the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

70.    Because Schwartz knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Angela the Wages she earned, Schwartz is deemed to be Angela's "employer" pursuant to the Wage Act.

71.    Angela's salary and commissions constitute "wages" under the WPCA.

72.    Angela has made a written demand of Schwartz for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Angela's demand, Schwartz has failed and refused to pay Angela her final compensation.

73.    Schwartz's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count IV of the Amended Complaint in her favor and against Howard Schwartz in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

### Count V
### Violation of the Wage Act
### Thomas v. Unicyn

74. Thomas restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 43 and 45 of this Amended Complaint as if fully set forth herein.

75. The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

76. The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

77. Unicyn is deemed to be included as Thomas' "employer" pursuant to the Wage Act.

78. Thomas' salary and commissions constitute "wages" under the WPCA.

79. Thomas has made a written demand of Unicyn for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Thomas' demand, Unicyn has failed and refused to pay Thomas his final compensation.

16

80.    Unicyn's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count V of the Amended Complaint in his favor and against Defendant, Unicyn Financial Companies, LLC, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

## Count VI
## Violation of the Wage Act
## Angela v. Unicyn

81.    Angela restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 44 and 45 of this Amended Complaint as if fully set forth herein..

82.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

83.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation,

17

if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

84.    Unicyn is deemed to be included as Angela's "employer" pursuant to the Wage Act.

85.    Angela's salary and commissions constitute "wages" under the WPCA.

86.    Angela has made a written demand of Unicyn for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act.  Despite Angela's demand, Unicyn has failed and refused to pay Angela her final compensation.

87.    Unicyn's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count VI of the Amended Complaint in her favor and against Defendant, Unicyn Financial Companies, LLC, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

### Count VII
### Breach of Contract
### Bakers v. Unicyn

88.    The Bakers restate, reallege and incorporate Paragraphs 1 through 45 of this Amended Complaint as if fully set forth herein.

18

89. The Employment Agreement constitutes a binding and enforceable contract.

90. Unicyn materially breached the Employment Agreement in one of more of the following respects: (1) failed to pay – in a timely fashion or otherwise -- the Bakers the commissions due on loans they procured; (2) failed to fund loans procured by the Bakers; (3) failed to furnish the Bakers with the information necessary to exercise their rights under the Employment Agreement; (4) misrepresented the nature of its transaction with Leaf; and (5) unilaterally altered the terms of the Bakers' employment, including their right to compensation that had already been earned.

91. The Bakers performed all conditions precedent required of them under the Employment Agreement.

92. Alternatively, the Bakers were excused from further performance of their duties under the Employment Agreement due to the prior breach of the Employment Agreement by Unicyn.

93. As a direct and proximate result of Unicyn's breach of the Employment Agreement, the Bakers have suffered damages.

WHEREFORE, Plaintiffs/Counter-Defendants, Thomas Baker and Angela Baker, respectfully request that this Honorable Court enter judgment in their favor and award them damages, in an amount to be proven at trial, against Defendant Unicyn Financial Companies, LLC, and award them any other or further relief that the Court deems just and fair.

19

**Count VII**
**Fraud**
**Bakers v. All Defendants**

94.    The Bakers repeat the allegations contained in Paragraphs 1 through 45 of this Amended Complaint as if fully set forth herein.

95.    In connection with the hiring of the Bakers and after they were hired, Defendants made false statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

96.    Specifically, Defendants: (a) misrepresented to the Bakers and their colleagues the nature and magnitude of the resources that Unicyn had at its disposal to fund the numerous loans that the Bakers and their colleagues anticipated procuring; (b) failed to disclose to the Bakers that they were in process of negotiating the sale of Unicyn to a third party; and (c) misrepresented the true nature of the Unicyn's transaction with Leaf.

97.    Defendants intended that the Bakers rely on the statements or omissions alleged above, in order to induce the Bakers to leave HPSC and join Unicyn and to refrain from exercising their rights under the Employment Agreement.

98.    At the time that Defendants made the misrepresentations omissions set forth above, Defendants knew that they were false, and Defendants made the representations and omissions in order to induce

20

the Bakers to leave HPSC and join Unicyn and to refrain from exercising their rights under the Employment Agreement.

99.    In reliance on the misrepresentations set forth above, and reasonably and justifiably believing them to be true, the Bakers resigned from HPSC and joined Unicyn and refrained from exercising their rights under the Employment Agreement.

100.  As a direct and proximate result of Defendants' fraudulent conduct as set forth above, the Bakers sustained substantial monetary loss.

WHEREFORE, Plaintiffs/Counter-Defendants, Thomas Baker and Angela Baker, respectfully request that this Honorable Court enter judgment in their favor and award them compensatory and punitive damages, in an amount to be proven at trial, against Defendants, Patrick McGahren, Howard Schwartz and Unicyn Financial Companies, LLC, and award them any other or further relief that the Court deems just and fair.

Thomas Baker & Angela Baker


By:_____
     One of their attorneys


Firm No. 30375
Paul A. Greenberg, Esq.
Howard J. Fishman, Esq.
Aronberg Goldgehn Davis & Garmisa
330 North Wabash -. Suite 3000

21

Chicago, Illinois   60611
(312) 828-9600 Telephone
(312) 828-9635 Facsimile
454192.1

# EXHIBIT 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          RAS0-1
COUNTY DEPARTMENT, LAW DIVISION                         10/99

TAYLR                              )
                                   )
                                   )
                                   )
                                   )
          vs.                      )    No.  _____
                                   )
                                   )
_____, et al                )    Calendar T
                                   )
                                   )

## INTAKE/INITIAL CASE MANAGEMENT ORDER

This cause coming on to be heard on the Intake/Initial Status Call, and the Court having conducted a Case Management Conference, **IT IS HEREBY ORDERED:**

. Written fact discovery to be completed by _____          4296

. Oral fact discovery to be completed by _____           4296

.  Rule 213(f) and (g) interrogatories to be propounded by _____     4231

  Plaintiff to answer Rule 213 (f) and (g) interrogatories by _____      4206

  Defendant to answer Rule 213 (f) and (g) interrogatories by _____      4206

  Plaintiff's Rule 213 (g) witnesses to be deposed by _____      4218

  Defendant's Rule 213 (g) witnesses to be deposed by _____      4218

  Case is set for further Status/Case Management on _____ at _____  4315/4619

  Case is set for Pretrial/Settlement Conference on _____ at _____  4405

. Plaintiff shall submit to Chambers 2303 a Pretrial memorandum within ten days.     4251

ENTER: _____

Judge Allen S. Goldberg

# EXHIBIT 6

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

THOMAS BAKER & ANGELA BAKER,

                                Plaintiffs,

        Vs                                    Case No.  07 L 1900

PATRICK MCGAHREN, HOWARD
SCHWARTZ and UNICYN FINANCIAL
COPANIES, LLC, a New Jersey limited
liability company,

                                Defendant.

### NOTICE OF FILING

        To:    See attached service list

        PLEASE TAKE NOTICE THAT ON the 16 day of October, 2007, I have
caused to be filed with the Clerk of the Circuit Court of Cook County, Illinois
the attached **First Amended Complaint at Law**.

                        THOMAS BAKER & ANGELA BAKER

                        By: _____
                                One of their attorneys


Paul A. Greenberg, Esq.
Howard J. Fishman, Esq.
ARONBERG GOLDGEHN DAVIS & GARMISA
330 North Wabash Avenue- Suite 3000
Chicago, Illinois 60611
312-828-9600
Firm ID. 30375

## PROOF OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Illinois code of Civil Procedure, Jennifer DeVisme certifies that she served copies of this notice and accompanying pleadings by

[  ] faxing a copy consisting of ___ pages to _____ from Suite 3000, 330 North Wabash, Chicago, Illinois at or before 5:00 p.m. on _____, 2007.

[X] mailing same to the persons listed above at their addresses set forth hereinabove, in the United States Mail Chute at 330 North Wabash Avenue, Chicago, Illinois 60611 at or before 5:00 p.m., postage prepaid; first class mail, this 10th day of October, 2007.

[  ] hand delivery at or before 5:00 p.m. on ___ day of _____, 2007.

454711.v1

## SERVICE LIST

*Thomas Baker and Angela Baker v. Patrick McGahren & Howard Schwartz*

2007 L 1900

Andrew S. Rosenman
Diane Sabol
Mayer, Brown Rowe & Maw LLP
71 S. Wacker Drive,
Chicago, Illinois 60606

Randall C. Schauer
Fox Rothschild LLP
747 Constitution Drive, St. 100
PO Box 673
Exton, Pennsylvania 19341

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

Thomas Baker & Angela Baker,                  )
                                              )
            Plaintiffs,                       )
                                              )
      v.                                      )      No. 07 L 1900
                                              )
Patrick McGahren, Howard Schwartz and         )
Unicyn Financial Companies, LLC, a New        )
Jersey limited liability company,             )
                                              )
            Defendant.                        )
                                              )

## FIRST AMENDED COMPLAINT AT LAW

Plaintiffs, Thomas Baker and Angela Baker, by their attorneys, Aronberg
Goldgehn Davis & Garmisa, for their First Amended Complaint against
Defendants, Patrick McGahren, Howard Schwartz and Unicyn Financial
Companies, LLC, a New Jersey limited liability company (sometimes collectively
referred to as "Defendants"), state as follows:

## PARTIES, JURISDICTION & VENUE

1.     Plaintiffs, Thomas Baker ("Tom") and Angela Baker ("Angela")
(hereinafter collectively referred to as the "Bakers" or "Plaintiffs"), are
individuals residing in the State of Illinois.

2.     Plaintiffs are informed and believe that Defendant, Patrick
McGahren ("McGahren"), is an individual residing in the State of Pennsylvania.

3.     Plaintiffs are informed and believe that Defendant, Howard
Schwartz ("Schwartz"), is an individual residing in the State of New Jersey.

4.     Plaintiffs are informed and believe that Defendant, Unicyn Financial Companies, LLC, ("Unicyn"), is a limited liability company residing in the State of New Jersey.

5.     Jurisdiction and venue are proper in Cook County, Illinois because Defendants employed, as that term is defined in the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.*) (the "Wage Act"), Plaintiffs in Cook County, Illinois, violated the Wage Act in Cook County, Illinois, solicited Plaintiffs' employment in Cook County, Illinois, paid wages to Plaintiffs here, breached a contract in Illinois and committed torts here.

## BACKGROUND

6.     Prior to joining Unicyn, Angela and Tom (sometimes collectively referred to as the "Bakers"), were employed by HPSC, Inc. ("HPSC") as sales representatives. Tom had been employed by HPSC since 1995, and Angela since 2003.

7.     HPSC provides financing to healthcare professionals (internists, radiologists, OB/GYN doctors, ophthalmologists, dermatologists, dentists, chiropractors, cosmetic surgeons, veterinarians, orthopedists and community health practitioners) throughout the United States.  It provides both medical equipment financing as well as non-equipment financing, such as practice finance, leasehold improvements and debt consolidation.  Unicyn was a competitor of HPSC's in this industry.

2

8.    At all times relevant hereto, McGahren and Schwartz, were the President and Chief Executive Officer of Unicyn, respectively. McGahren and Schwartz were principally responsible for all of Unicyn's business and financial decisions, including ensuring that Unicyn paid Plaintiffs' wages.

9.    In early 2005, McGahren and Schwartz began negotiating with the Bakers, as well as several of their colleagues at HPSC, to join Unicyn.

10.    Although the base compensation and benefits offered to the Bakers was significantly less than what they were earning at HPSC, Defendants offered the Bakers and their colleagues something that they did not have at HPSC, *i.e.*, the opportunity to acquire an equity stake in Unicyn.

11.    Specifically, the Bakers' employment agreement (the "Employment Agreement") with Unicyn provided that, "[a]s a **special inducement** for you to join the Unicyn team, we will provide you with two separate opportunities to acquire Class B units. The two grants will be referred to as Membership Interest Option Grant One and Membership Interest Option Grant Two." (Ex. 1, the Employment Agreement, p.2.)

12.    The Bakers' opportunity to acquire an equity interest in Unicyn under Membership Interest Option Grant Two was, in part, tied to the length of time that Unicyn remained in business.

13.    With respect to Membership Interest Option Grant One, the Bakers were granted the immediate right to acquire 500,000 Class B Units "[i]f Unicyn

3

[w]as sold prior to full vesting and [the Bakers were] both full-time employees on the date of such sale ..." (Ex. 1, p.3.)

14.    At the time, Defendants were attempting to induce the Bakers and their colleagues to leave HPSC and join Unicyn, the Bakers are informed and believe that Defendants were simultaneously attempting to sell Unicyn to LEAF. Financial Corporation ("Leaf").

15.    The Bakers were unaware that Defendants were attempting to sell Unicyn at the time that they were induced to join Unicyn and would never have joined Unicyn had Defendants disclosed these facts to them.

16.    Defendants' true purpose and motivation for hiring the Bakers and their colleagues was, on information and belief, to make Unicyn more attractive to Leaf.

17.    Defendants further represented to the Bakers and their colleagues that Unicyn had a vast array of resources at its disposal to fund the numerous loans that the Bakers and their colleagues anticipated procuring.

18.    Defendants also represented to the Bakers that Unicyn's legal counsel had reviewed the Bakers' employment agreement with HPSC and that the Bakers would not be breaching that agreement by joining Unicyn. To assure the Bakers of this fact, Unicyn agreed to compensate the Bakers for a specified amount of attorney's incurred by the Bakers in defending any lawsuit brought by HPSC.

4

19.    On July 6, 2005, Thomas and Angela signed an employment agreement (the "Employment Agreement") with Unicyn. (Ex. 1, the Employment Agreement.) At all relevant times, Unicyn was in the business of, among other things, providing specialized financial products to the healthcare industry and other commercial enterprises on a national basis.

20.    Shortly after executing the Employment Agreement, on or about July 15, 2005, Plaintiffs began working for Unicyn as sales representatives.

21.    Under the terms of the Employment Agreement, Unicyn was obligated to pay Thomas and Angela a base salary plus commissions (collectively referred to as "Wages") during the term of their employment, as well as commissions on all transactions funded after the termination of their employment for which they were the procuring cause.

22.    Defendants multiple representations to the Bakers all turned out to be completely false. Shortly after joining Unicyn, HPSC, which had been acquired by General Electric, sued not only the Bakers, but also the Bakers' colleagues and Unicyn in Texas and California.

23.    In these lawsuits, HPSC sought to enjoin the Bakers, their colleagues and Unicyn from, *inter alia*, soliciting the business of any customers with whom the former HPSC employees did business while at HPSC.

24.    The Bakers are informed and believe that Unicyn's negotiations with Leaf were put on hold while HPSC's lawsuit was pending.

5

25.    In or about January 2006, Unicyn settled all of the lawsuits. As a result, however, the Bakers ability to solicit business was curtailed for a period of time. The specific terms of the settlement agreement, and the details of the burdens placed on the Bakers, are the subject of a confidentiality agreement.

26.    As a result of the lawsuits, the Bakers incurred significant legal fees and costs as a result of the litigation for which they were not reimbursed.

27.    Nevertheless, the Bakers continued to work diligently for Unicyn, procuring numerous loans for it.

28.    By the Fall of 2005, Unicyn began experiencing difficulty funding the loans procured by the Bakers and their colleagues. These difficulties increased over time.

29.    The Bakers ultimately discovered that the vast resources which Defendants represented Unicyn as having were really comprised of not much more than a line of credit. And, once that line of credit was exhausted, Unicyn's ability to fund loans dramatically diminished.

30.    The Bakers lost actual and potential clients as a result of Unicyn's inability to fund loans procured by them.

31.    Not long after the settlement agreement in the lawsuits was consummated, the Bakers are informed and believe that Unicyn began negotiating anew with Leaf.

32.    On or about April 4, 2006, Leaf acquired Unicyn.

6

33.    The day before Leaf's acquisition of Unicyn, Defendants informed the Bakers, both orally and in writing, that they must agree to a dramatic reduction in the nature, scope, and amount of their compensation package under Employment Agreement if they wanted to retain their positions.

34.    To this end, Schwartz tendered to the Bakers a draft agreement (the "Proposed Employment Agreement") (Ex. 2) for them to review.

35.    Although the Proposed Employment Agreement purported to be between Unicyn and the Bakers, it was Leaf that retained the control to terminate it. (Ex. 2, p.1.)

36.    Defendants denied to the Bakers, however, that Leaf had acquired Unicyn, representing instead that the parties had simply embarked on a joint venture.

37.    The Bakers, however, had learned through independent sources that Unicyn was sold to Leaf. Indeed, Leaf press releases and various SEC filings of Leaf's parent company confirmed the Bakers' belief.

38.    Thus, the Bakers requested that Defendants provide them with certain specific information concerning the transaction between Leaf and Unicyn so that they could determine whether to exercise their option to acquire 500,000 Class B Units of Unicyn.

39.    Although Defendants eventually furnished some of the information requested by the Bakers, they refused to provide much of the key information needed to enable the Bakers to determine whether to exercise their rights.

7

Additionally, Defendants continued to represent to the Bakers that Unicyn had not been sold.

40.    By this point in time, the Bakers had realized that they had been duped by Defendants into leaving their employment at HPSC and believed that Defendants hired the Bakers and their colleagues solely to make Unicyn appear to be a major player in the healthcare finance sector and, thus, further Defendants own selfish motives.

41.    On or about June 19, 2006, the Bakers resigned their positions with Unicyn because of Defendants' material misrepresentations leading up to their execution of the Employment Agreement and Unicyn's repeated and systematic breaches of the Employment Agreement and its unilateral alteration of the material terms and conditions of their employment.    (Ex. 3, the letter of June 19, 2006.)

42.    Almost immediately thereafter, Defendants, without the Bakers' permission, debited the Bakers checking accounts in the amount of their last draws, in violation of state and federal banking and privacy laws.

43.    As of the date of Thomas' resignation, Unicyn owed him gross Wages on funded transactions in the amount of at least $67,343. Unicyn owed Thomas additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf; for which Thomas was the procuring cause.  Thomas is unable to ascertain the precise amount of post-

8

resignation commissions that he is owed because the information necessary to calculate that amount is in Defendants' control.

44.    As of the date of Angela's resignation, Unicyn owed her gross Wages on funded transactions in the amount of at least $29,314.  Unicyn owed Angela additional Wages with respect to transactions consummated after June 19, 2006 by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, for which Angela was the procuring cause.  Angela is unable to ascertain the precise amount of post-resignation commissions that she is owed because the information necessary to calculate that amount is in Defendants' control.

45.    On January 30, 2007, Thomas and Angela each sent McGahren, Schwartz and Unicyn a demand for payment of the amount of Wages owed to them pursuant to the Wage Act and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).  (True and accurate copies of Thomas' and Angela's demand letters are attached hereto as Exhibit 4-7, respectively.)  Despite Plaintiffs' demands, Unicyn has failed to pay Plaintiffs the amount of the Wages that they are owed.

## Count I
## Violation of the Wage Act
## Thomas v. McGahren

46.    Thomas restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 43 and 45 of this Amended Complaint as if fully set forth herein.

47.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

48.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

49.    Because McGahren knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Thomas the Wages he earned, McGahren is deemed to be Thomas' "employer" pursuant to the Wage Act.

50.    Thomas' salary and commissions constitute "wages" under the WPCA.

51.    Thomas has made a written demand of McGahren for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Thomas' demand, McGahren has failed and refused to pay Thomas his final compensation.

10

52.    McGahren's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count I of the Amended Complaint in his favor and against Defendant, Patrick McGahren, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

## Count II
## Violation of the Wage Act
## Angela v. McGahren

53.    Angela restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 44 and 45 of this Amended Complaint as if fully set forth herein.

54.    The Wage Act involves public rights and embodies Illinois public policy.  The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits.  An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

55.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period."  820 ILCS 115/3.  With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation,

11

if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

56.    Because McGahren knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Angela the Wages she earned, McGahren is deemed to be Angela's "employer" pursuant to the Wage Act.

57.    Angela's salary and commissions constitute "wages" under the WPCA.

58.    Angela has made a written demand of McGahren for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Angela's demand, McGahren has failed and refused to pay Angela her final compensation.

59.    McGahren's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count II of the Amended Complaint in her favor and against Patrick McGahren in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

## Count III
## Violation of the Wage Act
## Thomas v. Schwartz

12

60.    Thomas restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 43 and 45 of this Amended Complaint as if fully set forth herein.

61.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

62.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

63.    Because Schwartz knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Thomas the Wages he earned, Schwartz is deemed to be Thomas' "employer" pursuant to the Wage Act.

64.    Thomas' salary and commissions constitute "wages" under the WPCA.

65.    Thomas has made a written demand of Schwartz for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite

13

Thomas' demand, Schwartz has failed and refused to pay Thomas his final compensation.

66.    Schwartz's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count III of the Amended Complaint in his favor and against Defendant, Howard Schwartz, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

### Count IV
### Violation of the Wage Act
### Angela v. Schwartz

67.    Angela restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 44 and 45 of this Amended Complaint as if fully set forth herein.

68.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

69.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay

14

the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

70.    Because Schwartz knowingly permitted Unicyn to violate the Wage Act by directly or indirectly causing it not to pay Angela the Wages she earned, Schwartz is deemed to be Angela's "employer" pursuant to the Wage Act.

71.    Angela's salary and commissions constitute "wages" under the WPCA.

72.    Angela has made a written demand of Schwartz for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act.  Despite Angela's demand, Schwartz has failed and refused to pay Angela her final compensation.

73.    Schwartz's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count IV of the Amended Complaint in her favor and against Howard Schwartz in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

## Count V
## Violation of the Wage Act
## Thomas v. Unicyn

15

74.    Thomas restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 43 and 45 of this Amended Complaint as if fully set forth herein.

75.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

76.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

77.    Unicyn is deemed to be included as Thomas' "employer" pursuant to the Wage Act.

78.    Thomas' salary and commissions constitute "wages" under the WPCA.

79.    Thomas has made a written demand of Unicyn for payment of his compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Thomas' demand, Unicyn has failed and refused to pay Thomas his final compensation.

16

80.    Unicyn's willful refusal to pay Thomas his compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Thomas Baker, respectfully requests that this Honorable Court enter judgment on Count V of the Amended Complaint in his favor and against Defendant, Unicyn Financial Companies, LLC, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

### Count VI
### Violation of the Wage Act
### Angela v. Unicyn

81.    Angela restates, realleges and incorporates Paragraphs 1-5, 8, 19-21, 41, 44 and 45 of this Amended Complaint as if fully set forth herein..

82.    The Wage Act involves public rights and embodies Illinois public policy. The purpose of the Wage Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. An employer's denial of benefits earned by his employees burdens the State financially and socially by decreasing the tax base and potentially depleting State assistance funds.

83.    The Wage Act provides that employers must pay "every employee all wages earned during the [payroll] period." 820 ILCS 115/3. With respect to separated employees, the Wage Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation,

17

if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

84.   Unicyn is deemed to be included as Angela's "employer" pursuant to the Wage Act.

85.   Angela's salary and commissions constitute "wages" under the WPCA.

86.   Angela has made a written demand of Unicyn for payment of her final compensation (i.e., the Wages) pursuant to the Wage Actions Act. Despite Angela's demand, Unicyn has failed and refused to pay Angela her final compensation.

87.   Unicyn's willful refusal to pay Angela her final compensation violates the WPCA and the Wage Actions Act.

WHEREFORE, Plaintiff, Angela Baker, respectfully requests that this Honorable Court enter judgment on Count VI of the Amended Complaint in her favor and against Defendant, Unicyn Financial Companies, LLC, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, statutory penalties, and attorney's fees pursuant to the WPCA and the Wage Actions Act.

## Count VII
## Breach of Contract
## Bakers v. Unicyn

88.   The Bakers restate, reallege and incorporate Paragraphs 1 through 45 of this Amended Complaint as if fully set forth herein.

18

89.    The Employment Agreement constitutes a binding and enforceable contract.

90.    Unicyn materially breached the Employment Agreement in one of more of the following respects:  (1) failed to pay – in a timely fashion or otherwise -- the Bakers the commissions due on loans they procured; (2) failed to fund loans procured by the Bakers; (3) failed to furnish the Bakers with the information necessary to exercise their rights under the Employment Agreement; (4) misrepresented the nature of its transaction with Leaf; and (5) unilaterally altered the terms of the Bakers' employment, including their right to compensation that had already been earned.

91.    The Bakers performed all conditions precedent required of them under the Employment Agreement.

92.    Alternatively, the Bakers were excused from further performance of their duties under the Employment Agreement due to the prior breach of the Employment Agreement by Unicyn.

93.    As a direct and proximate result of Unicyn's breach of the Employment Agreement, the Bakers have suffered damages.

WHEREFORE, Plaintiffs/Counter-Defendants, Thomas Baker and Angela Baker, respectfully request that this Honorable Court enter judgment on Count VII of the Amended Complaint in their favor and award them damages, in an amount to be proven at trial, against Defendant Unicyn Financial Companies, LLC, and award them any other

19

or further relief that the Court deems just and fair.

## Count VIII
## Fraud
## Bakers v. All Defendants

94.    The Bakers repeat the allegations contained in Paragraphs 1 through 45 of this Amended Complaint as if fully set forth herein.

95.    In connection with the hiring of the Bakers and after they were hired, Defendants made false statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

96.    Specifically, Defendants: (a) misrepresented to the Bakers and their colleagues the nature and magnitude of the resources that Unicyn had at its disposal to fund the numerous loans that the Bakers and their colleagues anticipated procuring; (b) failed to disclose to the Bakers that they were in process of negotiating the sale of Unicyn to a third party; and (c) misrepresented the true nature of the Unicyn's transaction with Leaf.

97.    Defendants intended that the Bakers rely on the statements or omissions alleged above, in order to induce the Bakers to leave HPSC and join Unicyn and to refrain from exercising their rights under the Employment Agreement.

98.    At the time that Defendants made the misrepresentations omissions set forth above, Defendants knew that they were false, and

Defendants made the representations and omissions in order to induce the Bakers to leave HPSC and join Unicyn and to refrain from exercising their rights under the Employment Agreement.

99.     In reliance on the misrepresentations set forth above, and reasonably and justifiably believing them to be true, the Bakers resigned from HPSC and joined Unicyn and refrained from exercising their rights under the Employment Agreement.

100.  As a direct and proximate result of Defendants' fraudulent conduct as set forth above, the Bakers sustained substantial monetary loss.

WHEREFORE, Plaintiffs/Counter-Defendants, Thomas Baker and Angela Baker, respectfully request that this Honorable Court enter judgment on Count VIII of the Amended Complaint in their favor and award them compensatory and punitive damages, in an amount to be proven at trial, against Defendants, Patrick McGahren, Howard Schwartz and Unicyn Financial Companies, LLC, and award them any other or further relief that the Court deems just and fair.

Thomas Baker & Angela Baker

By:_____
                One of their attorneys

Firm No. 30375
Paul A. Greenberg, Esq.
Howard J. Fishman, Esq.
Aronberg Goldgehn Davis & Garmisa
330 North Wabash -. Suite 3000
Chicago, Illinois  60611
(312) 828-9600 Telephone
(312) 828-9635 Facsimile


454192.1

22



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5600 • FAX: (201) 767-5567 • 800-3-UNICYN • www.unicyn.com

July 5, 2005

Mr. Thomas Baker
Ms. Angela Baker
358 Carey Court
Bloomingdale, Illinois 60108

Dear Tom and Angela:

It gives me great pleasure to offer you each the position of Director of the Healthcare Group of Unicyn Financial Companies, LLC, a New Jersey limited liability company ("*Unicyn*"). In addition to confirming our offer, this letter sets out the terms and conditions of your employment which would be effective upon resignation from your current employer. It also outlines the major features of Unicyn's compensation, membership interest options and benefit plans and practices.

**Assumption of Duties:** We propose that effective on or about July 5, 2005 you will each assume the position outlined reporting directly to Pat McGahren, President. Throughout the period of your employment hereunder you will each devote your full business time, attention and energy to the business of Unicyn.

**Base Salary:** (a) Throughout the period of his employment, Thomas Baker will be paid a base salary calculated at the rate of (x) $240,000 per year during the Ramp-Up Period (as defined below), and (y) $125,000 per year during the remainder of the term of his full-time employment, payable in accordance with Unicyn's standard payroll procedures and subject to applicable withholding taxes.

(b) Throughout the period of her employment, Angela Baker will be paid a base salary calculated at the rate of (x) $120,000 per year during the Ramp-Up Period, and (y) $80,000 per year during the remainder of the term of her full-time employment, payable in accordance with Unicyn's standard payroll procedures and subject to applicable withholding taxes (collectively with the amount to be paid to Thomas Baker as set forth in paragraph (a) above, the "*Base Salary*").

**Commission Structure:** (a) In addition to the Base Salary payable to you as set forth above and expressly subject to validation of your then current Base Salary as set forth in the next sentence, throughout the period of your employment you will be paid a commission in an aggregate amount equal to 40% of the "Gross Profit" earned by Unicyn on lease transactions generated primarily as a direct result of your individual efforts (the "*Commission*"). Notwithstanding anything to the contrary in this section, Unicyn will not have any obligation to make any Commission payments to you unless throughout the term of your employment you first validate your Base Salary by funding an aggregate of (x) $75,000 of Gross Profit per calendar month on your lease transactions during the Ramp-Up Period, and (y) $42,708 of Gross Profit per calendar month on your lease transactions during the remainder of the term of your full-time employment (each, the "*Threshold Gross Profit Amount*"), at which point Unicyn will begin to make Commission payments to you in an aggregate amount equal to 40% of the amount by which the aggregate Gross Profit earned by Unicyn on lease transactions generated primarily as a direct result of your individual efforts exceeds the aggregate Threshold Gross Profit Amount. Unicyn will "true up" the two accounts throughout the year.



*Commercial and Healthcare Financing*



**EXHIBIT**



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5600 • FAX: (201) 767-5567 • 800-3-UNICYN • www.unicyn.com

(b)    Thus, by way of example and assuming no prior history of payments or lease transactions, if during the period of the first two consecutive calendar months of the employment term the Gross Profit on lease transactions generated primarily as a direct result of your individual efforts equals an aggregate of $125,000, Unicyn will not be required to make a Commission payment to you with respect to such two calendar month period as the aggregate Threshold Gross Profit Amount of $150,000 ($75,000 x 2 = $150,000) does not exceed the aggregate Gross Profit of $125,000. By way of further example, if the Gross Profit on lease transactions generated primarily as a direct result of your individual efforts during the next calendar month equals $175,000, Unicyn will be required to make a Commission payment to you in the amount of $30,000 ($75,000 x .40 = $30,000) with respect to such three month period. In such example, the Threshold Gross Profit Amount for such three month period equals $225,000 ($75,000 x 3 = $225,000), the aggregate Gross Profit equals $300,000 ($125,000 + $175,000 = $300,000) and the aggregate Gross Profit exceeds the Threshold Gross Profit Amount by $75,000 ($300,000 − $225,000 = $75,000).

(c)    For all purposes of this section, the period from July 5, 2005 through December 31, 2005 (the "*Ramp-Up Period*") shall be treated as a separate and distinct period. In the event that the aggregate amount of the Gross Profit earned on your lease transactions during the Ramp-Up Period exceeds the aggregate amount of the Threshold Gross Profit Amount for the Ramp-Up Period, Unicyn will make a Commission payment to you on or before January 15, 2006 in an aggregate amount equal to 40% of the amount by which the aggregate Gross Profit exceeds the aggregate Threshold Gross Profit Amount during the Ramp-Up Period.

(d)    In the event that during the Ramp-Up Period the aggregate amount of the Gross Profit earned on your lease transactions is less than the aggregate amount of the Threshold Gross Profit Amount (the "*Ramp-Up Deficit*"), such amount will be recovered by Unicyn against aggregate Commission payments due to you pursuant to this section commencing with Commission payments due in the calendar month of July, 2006, provided that in no event will Unicyn be entitled to recover more than one-twelfth (8.33%) of the Ramp-Up Deficit in any calendar month and further provided that in the event that one or both of you voluntarily terminate your employment relationship with Unicyn at any time, the entire amount of the Ramp-Up Deficit that has not been recovered by Unicyn as of the date of such termination shall immediately become due and payable in full.

(e)    For purposes of calculating the commissions payable to you pursuant to this section on an individual lease transaction, "*Gross Profit*" shall mean the total amount of all advance rentals, collected documentation fees, plus the present value of the remaining rental stream calculated based on Unicyn's funding costs; minus the equipment cost, any third party referral fees, taxes, Unicyn documentation/processing fees, and any extraordinary transaction costs such as UCC searches, tax or lien searches, equipment inspections or the like. The net difference will be the "Gross Profit" earned on the lease transaction for commission calculation purposes.

**Special Production Bonus:** In addition to the Commission payable to you pursuant to the immediately preceding section, Unicyn will pay to you a lump sum aggregate production bonus in the amount of $50,000, provided that you achieve an aggregate minimal funding threshold of $2,500,000 of Gross Profit production during the period commencing on the date hereof and ending on January 15, 2008. The special production bonus will be paid to you within 90 days of achievement of the Gross Profit production goal.

**Equity Plan:** (a) As a special inducement for you to join the Unicyn team, we will provide you with two separate opportunities to acquire Class B Units of Unicyn Financial Companies, LLC that will be granted and will vest based on your aggregate personal production. The two grants will be referred to as Membership Interest Option Grant One and Membership Interest Option Grant Two. Capitalized terms not otherwise used herein shall have the meaning ascribed to such terms in the Operating Agreement of Unicyn.



*Commercial and Healthcare Financing*



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 636 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

(b)    **Membership Interest Option Grant One:**    Effective as of the first day of your employment by Unicyn, you will be granted an option to purchase an aggregate of 500,000 Class B Units of Unicyn Financial

Companies, LLC (representing 5% of the currently issued and outstanding Units of Unicyn) at an exercise price of $.50 per Class B Unit. Membership Interest Option Grant One will vest and become exercisable over time based upon the aggregate "Gross Profit" earned on lease transactions generated primarily as a direct result of your individual efforts according to the following schedule:

**Vesting of Membership Interest Option Grant One:**
⇒ $500,000 Gross Profit = 100,000 Class B Units vested
⇒ $1 million Gross Profit = an additional 100,000 Class B Units vested
⇒ $1.5 million Gross Profit = an additional 100,000 Class B Units vested
⇒ $2.0 million Gross Profit = an additional 100,000 Class B Units vested
⇒ $3.0 million Gross Profit = the final 100,000 Class B Units vested

**Conditions of Membership Interest Option Grant One:**
1) If Unicyn is sold prior to full vesting and you are both active full-time employees on the date of such sale, Membership Interest Option Grant One will fully vest such that you will have the immediate right to acquire all 500,000 Class B Units.
2) Membership Interest Option Grant One will cease vesting and will terminate (x) immediately upon the termination by you of your employment for any reason or the termination of both of you by Unicyn for "cause", (y) 30 days after the termination of the employment of both of you by Unicyn for any other reason, or (z) one year following the termination of your employment as a result of your death or disability.

(c)    **Membership Interest Option Grant Two:**    The second opportunity to earn equity in Unicyn Financial Companies, LLC will be determined based on the aggregate production of your individual office "Group" coupled with and compared to the entire team of five employees joining Unicyn in 2005. For purposes of Membership Interest Option Grant Two, the new employees will be broken into three Groups defined as the "Texas Group", the "West Coast Group" and the "Chicago Group." You will be known as the Chicago Group.

Membership Interest Option Grant Two will consist of a pool of options evidencing the right to purchase 1,500,000 Class B Units of Unicyn Financial Companies, LLC that will be allocated among and granted to the three Groups on a "pro-rata" basis based on Gross Profit earned minus direct expenses incurred by each Group from and after July 5, 2005 ("Contribution"). The pro-rata "Contribution" of each of the three Groups will establish the percentage of the 1,500,000 options to be awarded to each Group. For example,

⇒ If Group 1 earns $1,000,000 per year PV Profit – $600,000 expenses = $400,000 Contribution annually x 5 years = $ 2,000,000 total Contribution;
⇒ If Group 2 earns $1,000,000 per year PV Profit - $750,000 expenses = $250,000 Contribution annually x 5 years = $1,250,000 total Contribution; and
⇒ If Group 3 earns $800,000 per year PV Profit - $500,000 expenses = $300,000 Contribution annually x 5 years = $1,500,000 total Contribution

In this example, the total contribution of the three Groups would be $2 million + $1.25 million + 1.5 million = $4.75 million. The available option pool would then be allocated pro rata based upon the aggregate Contribution of each Group as follows:



*Commercial and Healthcare Financing*



# UFC
## Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5000 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

⇒  Group 1 share  = $2m / $4.75m = 42% of the 1,500,000 Class B Unit options;
⇒  Group 2 share =  $1.25m / $4.75m = 26% of the 1,500,000 Class B Unit options; and
⇒  Group 3 share = $1.5m / $4.75m   = 32% of the 1,500,000 Class B Unit options.

Membership Interest Option Grant Two will be granted at such time as the three Groups produce an aggregate Contribution of $4 million. Notwithstanding the foregoing, the allocation formula set forth above and the minimum aggregate required Contribution of $4 million each assumes that all three Groups remain active (i.e., all five new employees of the Unicyn remain as full-time employees) from July 5, 2005 until the date that Membership Interest Option Grant Two is awarded. If at any time during the period from July 5, 2005 until the date that Membership Interest Option Grant Two is awarded: (x) only two of the three Groups remain active, the Membership Interest Option Grant Two pool will be reduced from options to acquire 1,500,000 Class B Units to 1,000,000 Class B Units and the required aggregate Contribution will be reduced to $2,666,666 (expressly excluding any Contribution made by the withdrawing Group); or (y) only your Group remains active, the Membership Interest Option Grant Two pool will be reduced from options to acquire 1,500,000 Class B Units to 500,000 Class B Units and the required aggregate Contribution will be reduced to $1,333,333 (expressly excluding any Contribution made by the withdrawing Groups).

The options to be granted pursuant to Membership Interest Option Grant Two will vest and become exercisable in four equal annual installments commencing on the first anniversary of the date of grant at an exercise price per share equal to the fair market value of a Unit on the date of grant as then determined by the Managers of Unicyn. If a public company valuation exists on the date of grant, then the existing public price will be used to establish the exercise price per share.

(d)    **Early Vesting / Payout Feature:**  If Unicyn is sold prior to prior to full vesting of Membership Interest Option Grant Two and both of you are active full-time employees on the date of such sale, then you will be paid a special conditional retention bonus in lieu of Membership Interest Option Grant Two in an amount equal to 25% of the aggregate capital appreciation actually realized on Membership Interest Option Grant One as of the date of the closing of such sale, with such amount to be paid to you in two equal annual installments (payable 90 days after each of the first two anniversaries of the closing) as an incentive for both of you to stay with Unicyn and the successor company for the two year period after any such sale.

For example, assuming on the date of sale your Membership Interest Option Grant Two has not yet vested, Membership Interest Option Grant One is fully vested and Unicyn is sold for $5.50 per Unit, you would realize aggregate capital appreciation and would be entitled to an aggregate conditional retention bonus of 25% of $5.00 per Unit ($5.50 - $.50 (assumed option exercise price) option value). This would translate into a realized equity value with respect to Membership Interest Option Grant One of 500,000 option Units x $5.00 of appreciation equaling a total appreciation of $2,500,000. You would also be entitled to a conditional retention bonus of 25% of the capital appreciation (in this example of $2,500,000) which in this example would equal an aggregate of $625,000.

**Expenses / Equipment:**  Unicyn will provide for the basic expenses of running your office, including phone, rent, internet and the required equipment.  Based on the initial annual target funding volume of $26 million, we are anticipating not more than $60,000 in total expenses for your office in the first year of operations. Thereafter, we will typically target approximately 4% of your anticipated Gross Profit as annual operating expenses for your office. This amount will be reviewed by both parties each year based on volume and profitability and adjusted as appropriate.



Commercial and Healthcare Financing



## Unicyn Financial Companies
10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

**Benefit Plans:** Throughout the term of your employment you will be entitled to participate in all Unicyn company benefit plans in accordance with company policy. The details of the existing benefit plans will be provided to you. Our existing plans include basic medical coverage as well as a company 401-k plan.

**Reimbursement for Meeting Costs:** Once you join Unicyn, we will reimburse you for direct airfare and hotel costs incurred in connection with our April 2005 meeting in Houston, Texas.

**Executive Advisory Panel:** As part of your employment with Unicyn, you will be invited to participate as members of the Executive Advisory Panel (the "EAP"). The EAP will meet annually with the primary purpose of reviewing the growth initiatives and future direction of Unicyn. Your input as senior members of the team will be valuable to us as we evaluate strategic opportunities to ultimately realize the maximum value for the members of Unicyn through the growth of the business. We will also use the EAP to review current credit and operational issues, system issues, marketing and sales related issues with the goal of providing insights into improving the overall operations of the company.

**Cancellation Penalty:** Once you have accepted our offer of employment as set forth in this letter, we will begin to expend time and financial resources to prepare for your start date. This will include system costs, recruiting fees, printing, phone, rent commitments and legal expenses. If, after you accept our offer, you do not start with Unicyn and complete a minimum of 12 months of full-time employment, you will reimburse Unicyn for the out-of-pocket aggregate amount of all such expenses, provided that such amount will not exceed $25,000. You understand that we are relying on your written acceptance as authorization to commence our process of formally staffing up and preparing for your start date.

**Confidentiality of Agreement and Covenants: (a)**     It is agreed and understood that you will not disclose the terms or existence of this letter or any fact concerning its negotiation or implementation. You may, however, discuss the contents of this letter with your family, legal, recruiting and/or financial counselor. The terms of your employment and the membership unit option plans described herein are highly confidential and must be treated as such.

(b)     As an express condition to Unicyn's employment and the payment to you of the Base Salary, except as may be required by applicable law, during the term of your employment and for a period of three years subsequent to such employment, you will not, without the written consent of an authorized officer of Unicyn, disclose to any person, other than a person to whom disclosure is reasonably necessary or appropriate in connection with the performance of your duties on behalf, and for the benefit, of Unicyn, any material confidential information concerning Unicyn and/or its lessees, vendors, funding sources or business obtained by you while employed by Unicyn, including, without limitation, any information concerning Unicyn's referral fee structure, lessees, management, procedures and business plans; provided, however, that confidential information shall not include any information known generally to the public (other than as a result of unauthorized disclosure by you) or any information of a type not otherwise considered confidential by persons engaged in the equipment leasing business. Immediately upon the termination of your employment, you will return all documents and copies in your possession or under your control related to and/or developed in connection with your employment, including, without limitation, all lease transaction documents and records, manuals, internal documents and vendor and funding source lists. You acknowledge and agree that all such documents



*Commercial and Healthcare Financing*



**Unicyn Financial Companies**

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX, (201) 767-5567 • 800-3-UNICYN • www.unicyn.com

will be and remain the property of Unicyn, that you will not acquire any interest in such documents and that you will not remove any such documents or computer disks or material stored on a computer from the offices of Unicyn, except as necessary in connection with the performance of your duties.

(c)    As a further express condition to Unicyn's employment and the payment to you of the Base Salary, during the term of your employment and for a period of two years subsequent to the termination of your employment, you will not directly or indirectly solicit or otherwise contact any persons then employed by or associated with Unicyn, including, without limitation, independent contractors then offering equipment lease transactions to Unicyn and any such employee, person or independent contractor who was employed by or did business with the Unicyn within six months prior to the date that Unicyn seeks to enforce the restriction set forth in this section, for the purpose of inducing any such person to leave the employ of, or association with, Unicyn, nor shall you be employed by or otherwise become associated with any entity where you will participate, directly or indirectly, in the solicitation of or otherwise contact such persons for the purpose of inducing such persons to leave the employ of, or association with, Unicyn.

**At-Will-Employment:** Neither this letter nor the membership unit options to be granted to you hereunder is an employment contract and neither should be construed or interpreted as containing any guarantee of continued employment. The employment relationship between you and Unicyn is "at-will" and by mutual consent. This means that you as employees have the right to terminate your employment at any time and for any reason subject to reimbursement of costs outlined above. Likewise, Unicyn reserves the right to discontinue your employment with or without cause at any time and for any reason and without the payment to you of any severance amount whatsoever. Notwithstanding anything to the contrary contained in this section: (a) provided that you devote your full business time, attention and energy to the business of Unicyn, use your best efforts to promote the business of Unicyn and generate new lease transaction business exclusively on behalf of, and for the benefit of, Unicyn, and comply with your obligtions as set forth herein, throughout the Ramp-Up period Unicyn will not terminate your employment other than for cause; and (b) provided that Unicyn complies in all material respects with its obligations set forth in this letter, you will not terminate your full-time employment with Unicyn for any reason at any time during the Ramp-Up period.

**Proprietary Information and Employment Limitations:** By acceptance of the offer of employment set forth herein, you agree that (1) no trade secret or proprietary information belonging to any other person or entity, including your previous employer, will be disclosed or used by you in connection with your employment by Unicyn, and that no such information, whether in the form of documents, memoranda, software, drawings, etc. will be retained by you or brought with you to Unicyn, and (2) you have brought to Unicyn's attention and provided it with a copy of any agreement which may impact your future employment at Unicyn, including non-disclosure, non-competition, invention assignment agreements or agreements containing future work restrictions, and that you represent that you are not subject to any restrictions under any agreement of this type. In the event that at any time during the Ramp-Up period your present employer commences a legal proceeding against you or any other Unicyn employee(s) under your control and supervision asserting a claim based upon a breach of an existing non-solicitation covenant in an agreement entered into between you, any other Unicyn employee(s) under your control and supervision and such former employer, then in such event Unicyn will reimburse you and/or such other Unicyn employee(s) for legal fees and expenses incurred by you and/or such other Unicyn employee(s) in connection with the defense of such claim in an amount not to exceed an aggregate of $20,000 upon the presentation by you and/or such other Unicyn employee(s) of reasonable supporting documentation.



Commercial and Healthcare Financing



# Unicyn Financial Companies

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-1-UNICYN • www.unicyn.com

If you agree with the foregoing, and affirm that there are no agreements or other impediments that would prevent you from providing exclusive service to Unicyn, please send me an email with your acceptance, sign this letter in the space provided below and mail the original executed copy to me at your earliest convenience. This offer letter will remain valid until July 8, 2005.

We are excited about the opportunity we have to achieve breakthrough results together at Unicyn. As a company, we have never been better positioned to take full advantage of the opportunities for growth and success in our industry. I look forward to having you join us. If you have any questions, please do not hesitate to email or call me.

Sincerely,

UNICYN FINANCIAL COMPANIES, LLC

By: _____
    Patrick McGahren
    President and Manager

By: _____
    Howard Schwartz
    Manager

AGREED AND ACCEPTED:

Thomas Baker
Date: July 6, 2005

Angela Baker
Date: July 6, 2005

Z:\org\Employment Agrees\Unicyn - Offer Letter Baker 062405.doc



Commercial and Healthcare Financing



**Unicyn Financial Companies**

10 McKINLEY STREET, SUITE 10 • P.O. BOX 636 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

April 3, 2006

Tom Baker
358 Carey Court
Bloomingdale, IL 60108

Dear Tom:

It gives us great pleasure to announce the new program agreement we have entered into with LEAF
Financial Corporation. As part of this new relationship, we are proposing to alter your compensation per
the terms of this letter agreement. You previously entered into a letter agreement with us dated July 5,
2005 which sets forth the terms and conditions of your employment relationship with us (your "Previous
Letter Agreement"). To the extent the terms and conditions of your employment set forth in this letter
agreement are inconsistent with the terms and conditions of your Previous Letter Agreement, this letter
agreement shall control and the inconsistent terms and conditions in your Previous Letter Agreement
shall be of no further force or effect. Without limiting the foregoing, if terminology in your Previous
Letter Agreement is inconsistent with terminology in this letter agreement (for example, the term "Base
Salary" in your Previous Letter Agreement has been replaced by the term "Draw" in this Agreement),
then it shall be considered an inconsistency.

As of the date hereof, the following terms and conditions shall apply to your employment with
Unicyn Financial Companies, LLC ("Unicyn"):

- **Monthly Draw Allowance.** You will receive an annual draw of $120,000 paid biweekly at
  $5,000 on the 5th and 20th of each month.

- **Commission.** Commissions will be earned monthly and paid on the 20th of the following month.
  The draw advance is recoverable against future commissions earned and tracked in your draw
  account. Unicyn will reconcile the account each month by calculating the draw advance net of
  commission generated. For example, month 1 your draw is $10,000 ($5,000 paid on the 5th and
  $5,000 paid on the 20th) and your commission earned in month one was $20,000. Month two you
  would receive your draw of $10,000 ($5,000 paid on the 5th and $5,000 paid on the 20th). In
  addition to your draw paid on the 20th of month two you would be paid $10,000 in commission
  ($20,000 earned commission from month 1 minus $10,000 draw equal $10,000 in commission).

- You are eligible to receive the draw advance as long as your deficit balance in the account does
  not exceed two and one half times your monthly draw or $25,000.00.

- Upon termination of agreement by either you or LEAF you shall repay the deficit within thirty
  (30) days of the termination.

- Your earned commissions will be determined by the attached commission schedule.



*Commercial and Healthcare Financing*

**EXHIBIT**



**Unicyn Financial Companies**

10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 767-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

- For assisting with the transition of our business under our new program agreement, we are offering the following special incentive compensation (provided you remain in the employ of Unicyn):

  o  From April 10, 2006 until June 9, 2006 you will receive the greater of your earned monthly commission or $10,000.00 per month.

We believe our new program agreement with LEAF affords us the opportunity to become a major player in the healthcare finance market. We are hopeful you have witnessed that opportunity over the past two days and will accept our offer.

Thank you and I look forward to your continued employment. If you agree with the foregoing, please sign this letter agreement in the space provided below.

Very truly yours,

Unicyn Financial Companies, LLC

By: _____
　　　　　Howard M. Schwartz
　　　　　Chief Executive Officer

AGREED AND ACCEPTED:

_____
Tom Baker

Date: April ___, 2006



Commercial and Healthcare Financing



# UFC
## Unicyn Financial Companies
10 McKINLEY STREET, SUITE 10 • P.O. BOX 536 • CLOSTER, NEW JERSEY 07624
(201) 787-5800 • FAX: (201) 767-5587 • 800-3-UNICYN • www.unicyn.com

April 3, 2006

Angela Baker
358 Carey Court
Bloomingdale, IL 60108

Dear Angela:

It gives us great pleasure to announce the new program agreement we have entered into with LEAF Financial Corporation. As part of this new relationship, we are proposing to alter your compensation per the terms of this letter agreement. You previously entered into a letter agreement with us dated July 5, 2005 which sets forth the terms and conditions of your employment relationship with us (your "Previous Letter Agreement"). To the extent the terms and conditions of your employment set forth in this letter agreement are inconsistent with the terms and conditions of your Previous Letter Agreement, this letter agreement shall control and the inconsistent terms and conditions in your Previous Letter Agreement shall be of no further force or effect. Without limiting the foregoing, if terminology in your Previous Letter Agreement is inconsistent with terminology in this letter agreement (for example, the term "Base Salary" in your Previous Letter Agreement has been replaced by the term "Draw" in this Agreement), then it shall be considered an inconsistency.

As of the date hereof, the following terms and conditions shall apply to your employment with Unicyn Financial Companies, LLC ("Unicyn"):

- **Monthly Draw Allowance.** You will receive an annual draw of $80,000 paid biweekly at $3,333 on the 5th and 20th of each month.

- **Commission.** Commissions will be earned monthly and paid on the 20th of the following month. The draw advance is recoverable against future commissions earned and tracked in your draw account. Unicyn will reconcile the account each month by calculating the draw advance net of commission generated. For example, month 1 your draw is $6,666 ($3,333 paid on the 5th and $3,333 paid on the 20th) and your commission earned in month one was $10,000. Month two you would receive your draw of $6,666 ($3,333 paid on the 5th and $3,333 paid on the 20th). In addition to your draw paid on the 20th of month two you would be paid $3,334 in commission ($10,000 earned commission from month 1 minus $6,666 draw equal $3,334 in commission).

- You are eligible to receive the draw advance as long as your deficit balance in the account does not exceed two and one half times your monthly draw or $16,665.00.

- Upon termination of agreement by either you or LEAF you shall repay the deficit within thirty (30) days of the termination.

- Your earned commissions will be determined by the attached commission schedule.



UFC
Commercial and Healthcare Financing



**Unicyn Financial Companies**

10 McKINLEY STREET, SUITE 10 · P.O. BOX 636 · CLOSTER, NEW JERSEY 07624
(201) 767-5800 · FAX: (201) 767-5587 · 800-3-UNICYN · www.unicyn.com

- For assisting with the transition of our business under our new program agreement, we are offering the following special incentive compensation (provided you remain in the employ of Unicyn):

  o From April 10, 2006 until June 9, 2006 you will receive the greater of your earned monthly commission or $6,666.00 per month.

We believe our new program agreement with LEAF affords us the opportunity to become a major player in the healthcare finance market. We are hopeful you have witnessed that opportunity over the past two days and will accept our offer.

Thank you and I look forward to your continued employment. If you agree with the foregoing, please sign this letter agreement in the space provided below.

Very truly yours,

Unicyn Financial Companies, LLC

By: _____

Howard M. Schwartz
Chief Executive Officer

AGREED AND ACCEPTED:

_____

Angela Baker

Date: April ___, 2006

**UFC**

Commercial and Healthcare Financing

June 19, 2006

**BY FACSIMILE (201-767-5587) &**
**OVERNIGHT COURIER**

Mr. Howard Schwartz
Unicyn Financial Companies. LLC
10 McKinley Street -- Suite 10
P.O. Box 536
Closter, New Jersey 07624

Dear Howard:

The purpose of this letter is to notify you that, effectively immediately, we are resigning from our positions at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to our signing the employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of our employment. In accordance with the terms of the Agreement, we reserve the right to acquire 500,000 Class B Units of Unicyn, which fully vested on or about April 4, 2006, within a reasonable time after you provide us with the additional information requested in our letter of April 18, 2006. It is our understanding that your counsel, Steven Gersh, has agreed to provide us with this information.

Since our relationship with Unicyn has come to an end, we are enclosing all documents that we, to the best of our knowledge, generated or received in connection with our employment at Unicyn. We have not enclosed the Sony notebook computers (the "Computers") or Blackberry smart phones (the "Phones") that Unicyn provided to us. We would like to keep the

EXHIBIT

3

Mr. Howard Schwartz
June 19, 2006
Page 2

Computers and are willing to pay you $1,000.00 for them. We intend to return the Phones, but would like to continue to use telephone numbers assigned to them. Please let our attorney know by June 26, 2006, what you would like us to do. Our counsel, Paul A. Greenberg, can be reached at 312-755-3135.

There is one other issue of which you should be aware. Unicyn currently owes (or will owe in the very near future) us commissions on the transactions set forth in the attached spreadsheets, which are categorized based on the status of transaction. Under the Illinois Wage Payment & Collection Act, Unicyn must immediately pay us the commissions due on the deals that have already funded. With respect to the remaining deals (*i.e.*, those that have not yet funded), we expect that Unicyn will pay our commissions once those deals are fully funded.

Sincerely,

By: _____
            Thomas Baker

By: _____
            Angela Baker

*Jon Baker*

**Funded but commissions not received**

**April**

| | | | | |
|---|---|---|---|---|
| Dr. Denise McCallister | 22180 SSD | Chicago | Dwight Fish | $ 159,891.75   4/21/2006 |
| Oak Lawn Dental | 10037774 | | | $ 25,000.00   out |
| Dr. Craig O'Donoghue | 21752 | | | $ 256,475.60   in |

**May**

**Doc's In**

| | | | | |
|---|---|---|---|---|
| Dr. Robert Nouneh | 39098 Working capital | | | $ 30,000.00 |

**Documents issued but not yet received back**

**Doc's Out**

| | | | | |
|---|---|---|---|---|
| Dr. Tim Kosinski | 38969 Lares | Chicago | Dick Linde | $ 72,840.00 |
| Dr. Phillip DeBossu | 10038567 | | | $ 139,043.11   out |
| Dr. Abdul Majzoub | 37770 Cory Dental | Chicago | Jo'in Khoury | $ 87,155.00   out |
| | | | | $ 299,018.11 |

**Approved and partially funded**

**June**

| | | | | |
|---|---|---|---|---|
| Dr. Francis Cavero | 37773 | | | $ 100,000.00   in |
| Dr. Maggie Augustyn | 10038577 | | | $ 90,000.00   out |
| Dr. John J. Brletic | 22907 Patterson | Cleveland | | $ 200,000.00   in |
| Dr. Eva Koser | 21904 Great Lakes | Wisconsin | Steve Saari | $ 300,000.00   in |

**Approved but no documents issued**

| | | | | |
|---|---|---|---|---|
| Dr. Wesley Rosenthal | 22535 Pollina Designs | Columbus | Eddie Pollina | $ 200,000.00 |
| Dr. Jonathan Hartstein | 22532 Prof Designs | Columbus | Eddie Pollina | $ 20,000.00 |
| Dr. Bill Howard Jr. | 39150 Working capital | | | $ 25,000.00 |
| Dr. Jordan Baiwch | 40219 Lares | Chicago | Dick Linde | $ 73,110.00 |
| Dr. William Nickel | 22353 | | | $ 350,000.00   out |
| Dr. Larry Miller | 22835 SSD | Cincinnati | Shawn Cleary | $ 100,000.00 |
| Hartland Cat Hospital | 34891 CIT | | Tim L | $ 200,000.00 |
| Dr's Matheson & Emch | 22643 CIT | | Tim L | $ 250,000.00   in |

**Angela Baker**

**Approved but not funded**

| | |
|---|---|
| Ron Anderson, O.D. | $21,359.00 |
| Mark Beckstead, D.D.S. | $38,500.00 |
| Dr. Charles Behney | $25,195.00 |
| Dr. Martin Cisneros | $38,500.00 |
| Dr. Michael Ciszek (visionary eyecare) | $15,584.00 |
| Dr. Lea Colby, O.D. | $23,714.60 |
| Dr. Dennis Dettman (GM Revelle)-Nidek | $18,231.25 |
| Family Vision | $63,043.00 |
| Paul J. Lederer, O.D, P.C. | $14,572.18 |
| Robert A. Marini, O.D., Assciates | $13,493.72 |
| John Regner- Regner Family Vision | $6,269.00 |
| Dr. Khaled Tawansy | $76,668.75 |
| Dr. Douglas Azzaro | $220,000.00 |
| Des Moines Retina | $320,000.00 |
| Debra Bourdeau | $200,000.00 |
| Kevin Fountain | $150,000.00 |

**Funded**

| | |
|---|---|
| Charles Breen, O.D. | $33,629.00 |
| Dr. Tim Brooks, D.D.S. | $38,500.00 |
| Dr. Daniel Niederkohr, O.D. | $20,426.00 |
| Dr. John Capellani, O.D. | $31,308.80 |
| Dr. Carlos Correa | $29,030.52 |
| Dr. David T. Duvendack | $15,000.00 |
| Dr. Vivian Fasula | $16,761.60 |
| James Ferguson | $38,896.00 |
| Steve M. Green, DDS, PC | $73,000.00 |
| Dr. John Hauge | $38,500.00 |
| Hernley Family & Cosmetic Dentistry, PC | $38,500.00 |
| Mavville Vision Center, Inc. | $25,105.00 |
| Dr. Richard Jackson | $13,500.00 |
| David A. Koch, O.D., Inc | $8,900.00 |
| Chittick Framily Eyecare, Ltd. | $11,322.89 |
| todd Meeks | $36,500.00 |
| Lee Newton | $45,285.00 |
| Kepree International | $38,800.00 |
| Gregory Pistone | $39,900.00 |
| Peter Ruff, D.D.S, P.C. | $29,000.00 |
| Steven Shadwick and Associates, Inc. | $12,000.00 |
| James Wardlaw | $10,934.00 |

$1,889,929.31

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135                                                          80027.00200

**BY CERTIFIED MAIL, RETURN
RECEIPT REQUESTED & OVERNIGHT COURIER**
Mr. Patrick McGahren
Leaf Financial Corp.
1818 Market Street, 9th Floor
Philadelphia, PA 19103

Re:   Angela Baker

Dear Mr. McGahren:

We represent Angela Baker ("Angela"). This letter constitutes the demand for payment of final compensation of Angela pursuant to the Illinois Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

As you know, on June 19, 2006, Angela resigned from her position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of her employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of her employment.

Under the terms of the Agreement, Unicyn was obligated to pay Angela her salary (wages plus commission) during the term of her employment, as well as commissions on transactions funded after the termination of her employment for which Angela was the procuring cause. Accordingly, we demand that you pay Angela as final compensation under the WPCA her gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions funded on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone

EXHIBIT
4

ALLENBERG GOLDBERG DAVIS & KETO
330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

Mr. Patrick McGahren
January 30, 2007
Page 2

acting or purporting to act on its behalf, after June 19, 2006, for which Angela was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of her wages and commissions through June 19, 2006, is $29,314.92.

Because the information needed to calculate Angela's Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand that you immediately furnish Angela with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Angela's territory following her resignation.

If we do not receive a check made payable to Angela in the amount of $29,314.92 (less required federal and state withholdings), plus the Commissions and Vacation Pay (including supporting documentation), on or before February 5, 2007, we will institute litigation on behalf of Angela wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)

428596.v1

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135                                                                                                80027.00200

**BY CERTIFIED MAIL, RETURN**
**RECEIPT REQUESTED & OVERNIGHT COURIER**
Mr. Patrick McGahren
Leaf Financial Corp.
1818 Market Street, 9th Floor
Philadelphia, PA 19103

      Re:    Thomas Baker

Dear Mr. McGahren:

      We represent Thomas Baker ("Thomas"). This letter constitutes the demand for payment of final compensation of Thomas pursuant to the Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

      As you know, on June 19, 2006, Thomas resigned from his position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of his employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of his employment.

      Under the terms of the Agreement, Unicyn was obligated to pay Thomas his salary (wages plus commission) during the term of his employment, as well as commissions on all transactions funded after the termination of his employment for which Thomas was the procuring cause. Accordingly, we demand that you pay Thomas as final compensation under the WPCA his gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions consummated on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone

EXHIBIT

5

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

Mr. Patrick McGahren
January 30, 2007
Page 2

acting or purporting to act on its behalf, after June 19, 2006, for which Thomas was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of his wages and commissions through June 19, 2006, is $24,843.58.

Because the information needed to calculate Thomas' Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand, pursuant to the WPCA, that you immediately furnish Thomas with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Thomas' territory following his resignation.

If we do not receive a check made payable to Thomas in the amount of $24,843.58 (less required federal and state withholdings), plus the Commissions and Vacation Pay (together with backup documentation), on or before February 5, 2007, we will institute litigation on behalf of Thomas wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)

428595 v1

ARNSTEIN GOLDSMITH DAVIS & FISHER
330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135

80027.00200

**BY CERTIFIED MAIL, RETURN**
**RECEIPT REQUESTED & OVERNIGHT**
**COURIER**

Mr. Howard Schwartz
Unicyn Financial Companies, LLC
10 McKinley Street -- Suite 10
P.O. Box 536
Closter, New Jersey 07624

Dear Mr. Schwartz:

    We represent Thomas Baker ("Thomas"). This letter constitutes the demand for payment of final compensation of Thomas pursuant to the Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

    As you know, on June 19, 2006, Thomas resigned from his position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of his employment agreement dated July 5, 2005 (the "Agreement"). Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of his employment.

    Under the terms of the Agreement, Unicyn was obligated to pay Thomas his salary (wages plus commission) during the term of his employment, as well as commissions on all transactions funded after the termination of his employment for which Thomas was the procuring cause. Accordingly, we demand that you pay Thomas as final compensation under the WPCA

**EXHIBIT**
**6**

Mr. Howard Schwartz
January 30, 2007
Page 2

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

his gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions consummated on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, after June 19, 2006, for which Thomas was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of his wages and commissions through June 19, 2006, is $24,843.58.

Because the information needed to calculate Thomas' Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand, pursuant to the WPCA, that you immediately furnish Thomas with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Thomas' territory following his resignation.

If we do not receive a check made payable to Thomas in the amount of $24,843.58 (less required federal and state withholdings), plus the Commissions and Vacation Pay (together with backup documentation), on or before February 5, 2007, we will institute litigation on behalf of Thomas wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:     Steven T. Gersh, Esq. (by overnight courier)

428474

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

January 30, 2007

312/755-3135

80027.00200

**BY CERTIFIED MAIL, RETURN
RECEIPT REQUESTED & OVERNIGHT
COURIER**

Mr. Howard Schwartz
Unicyn Financial Companies, LLC
10 McKinley Street -- Suite 10
P.O. Box 536
Closter, New Jersey 07624

Dear Mr. Schwartz:

We represent Angela Baker ("Angela"). This letter constitutes the demand for payment of final compensation of Angela pursuant to the Illinois Wage Payment and Collection Act ("WPCA") (820 ILCS 115/1, et seq.) and the Attorneys Fees in Wage Actions Act ("Wage Actions Act") (705 ILCS 225/1, et seq.).

As you know, on June 19, 2006, Angela resigned from her position at Unicyn Financial Companies, LLC ("Unicyn") due to, among other things, Unicyn's material misrepresentations leading up to the signing of her employment agreement dated July 5, 2005 (the "Agreement"), Unicyn's repeated and systematic breaches of the Agreement, and its unilateral alteration of the material terms and conditions of her employment.

Under the terms of the Agreement, Unicyn was obligated to pay Angela her salary (wages plus commission) during the term of her employment, as well as commissions on transactions funded after the termination of her employment for which Angela was the procuring cause. Accordingly, we demand that you pay Angela as final compensation under the WPCA

EXHIBIT

7

Mr. Howard Schwartz
January 30, 2007
Page 2

330 N. WABASH AVENUE · SUITE 3000

CHICAGO, ILLINOIS 60611

her gross wages (less required federal and state withholdings) through June 19, 2006, all commissions earned on financial transactions funded on or before June 19, 2006, as well as transactions consummated by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, after June 19, 2006, for which Angela was the procuring cause (the "Commissions"), and all accrued unpaid vacation time (the "Vacation Pay"). Our records indicate that the gross amount of her wages and commissions through June 19, 2006, is $29,314.92.

Because the information needed to calculate Angela's Commissions and Vacation Pay is in your sole control, we cannot estimate the amount owed for these categories of compensation. Hence, we demand that you immediately furnish Angela with an accounting on all transactions funded by Unicyn, including its agents, successors, assigns, and anyone acting or purporting to act on its behalf, in Angela's territory following her resignation.

If we do not receive a check made payable to Angela in the amount of $29,314.92 (less required federal and state withholdings), plus the Commissions and Vacation Pay (including supporting documentation), on or before February 5, 2007, we will institute litigation on behalf of Angela wherein we will seek from you not only the amounts claimed above, but also attorney's fees pursuant to the Wage Actions Act, court costs and statutory penalties.

Sincerely,

Paul A. Greenberg

PAG:tmb
cc:    Steven T. Gersh, Esq. (by overnight courier)

428431

# EXHIBIT 7

RASU-1
10/99

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

BAKER, et al                    )
                                )
                                )
                                )
                                )
            vs.                 )        No.    07   L   1700
                                )
MacFARLAND, et al               )
                                )
                                )        Calendar T
                                )

## INTAKE/INITIAL CASE MANAGEMENT ORDER

This cause coming on to be heard on the Intake/Initial Status Call, and the Court having conducted a Case Management Conference, **IT IS HEREBY ORDERED:**

Written fact discovery to be completed by _____    4296

Oral fact discovery to be completed by _____    4296

Rule 213(f) and (g) interrogatories to be propounded by _____    4231

Plaintiff to answer Rule 213 (f) and (g) interrogatories by _____    4206

Defendant to answer Rule 213 (f) and (g) interrogatories by _____    4206

Plaintiff's Rule 213 (g) witnesses to be deposed by _____    4218

Defendant's Rule 213 (g) witnesses to be deposed by _____    4218

Case is set for further Status/Case Management on ___10/16/07___ at __9:30__    4315/4619

Case is set for Pretrial/Settlement Conference on _____ at _____    4405

Plaintiff shall submit to Chambers 2303 a Pretrial memorandum within ten days.    4251

(1) Plaintiffs to respond to Defendants interrogatories within 14 days, 8/24/07
(2) Plaintiffs to answer/plead to Defendats' Counterclaim within 7 days, 8/17/07    KEH

Attorney No.: _____
Attorney for: _____
Address: _____
City/State: _____
Telephone: _____

ENTERED
JUDGE
AUG 10 2007
CLERK
DEPU

ENTER: _____
            Judge Allen S. Goldberg

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

PAVEL

              **Plaintiff,**

     v.

McGANN, et al.

              **Defendant.**

)
)
)
)
)
)
)
)
)
)

No. 07 L 1900

**Calendar T**

## ORDER

This cause coming on to be heard on the status call, **IT IS HEREBY ORDERED:**

1. The case is set for status on _____ at ____ , at which time counsel

   familiar with the case and with authority to act shall be present.                6315

Attorney No: 36575
Name:
Attorney for:
Address:
City/State:
Telephone:



ENTER_____

            Judge Allen S. Goldberg

## CERTIFICATE OF SERVICE

I, Diane R. Sabol, an attorney, hereby certify that on November 9, 2007, a copy of the foregoing Notice of Removal To the United States District Court For the Northern District of Illinois, Eastern Division, Local Rule 3.2 Disclosure, Appearances of Andrew S. Rosenman and Diane R. Sabol, and Pro Hac Vice Application for Randall C. Schauer were served upon the party listed below via first-class mail, postage pre-paid.

Diane R. Sabol

Paul A. Greenberg, Esq.
Howard J. Fishman, Esq.
ARONBERG, GOLDGEHN DAVIS & GARMISA
300 North Wabash Avenue, Suite 3000
Chicago, Illinois 60611